## McDANIEL v. BOARD OF PUBLIC INSTRUCTION FOR ESCAMBIA COUNTY, FLA., et al.

### Civ. No. 70.

District Court, N. D. Florida, Pensacola Division.

July 3, 1941.

McGill & McGill, of Jacksonville, Fla., and Thurgood Marshall, of New York City, for plaintiff.

Philip D. Beall, Jr., of Pensacola, Fla., Keen & Allen and J. Velma Keen, all of Tallahassee, Fla., and Lamar Sarra, of Tampa, Fla., for defendants.

LONG, District Judge.

This cause is before the court upon motion of defendants to dismiss the action because the complaint fails to state a claim against the defendants or either of them upon which relief can be granted. The complaint is to obtain a declaratory judgment declaring that the policy of the defendants in adopting and enforcing a salary schedule fixing the salaries of the plaintiff and other negro teachers and principals at a rate lower than that paid to white teachers and principals of equal qualifications and experience performing essentially the same services, solely because of their race and color, is a denial of the equal protection of the laws guaranteed by the Fourteenth Amendment of the United States Constitution; and, that an injunction issue restraining the defendants from paying to plaintiff or any other colored teacher or principal employed by them a less salary than they pay any white teacher or principal employed by them with equal qualifications, certification, and experience, and filling a similar position in the public schools of Escambia County.

The plaintiff Vernon McDaniel, who brings the suit on behalf of himself and others similarly situated, is colored, a person of African descent and of negro blood. He is a regular principal of a public school in Escambia County maintained and operated by the Board of Public Instruction of Escambia County.

This is a class action authorized by the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and the character of the rights involved are of common and general interest to the members of the class represented by the plaintiff.

The first question to be determined is whether from the pleading an unconstitutional discrimination is shown in fixing salaries of the negro school teachers by the defendants.

Second, defendants contend that the plaintiff McDaniel being a principal of one of the high schools does not represent a class other than "principals".

The third contention of defendants is that the act of the defendants is not violative of the Fourteenth Amendment because the State Constitution provides for a county public school system, and that if there is any discrimination between the salaries paid to white and colored teachers it is the act of the county school system and not of the state.

The allegations of the complaint as to the question of discrimination, and which must be taken as true on a motion to dismiss, are as follows:

"7. All teachers and principals in Florida, including plaintiff and others similarly situated are required to hold teaching certificates in full force in accordance with the rules of certification established by the State Board of Education (Florida Compiled General Laws, Section 630). Negro and white teachers and principals alike must meet the same requirements to receive teachers' certificates.

"9. Defendants over a long period of years have consistently pursued and maintained and are now pursuing and maintaining the policy, custom, and usage of paying Negro teachers and principals in the public schools of Escambia County less salary than white teachers and principals in said public school system possessing the same professional qualifications, certificates and experience, exercising the same duties and performing the same services as Negro teachers and principals. Such discrimination is being practiced against the plaintiffs and all other Negro teachers and principals in Escambia County, and is based solely upon their race or color.

"11. Plaintiff, Vernon McDaniel, has been employed as a regular teacher in Escambia County, Florida, and as a principal in the public schools of said County for more than thirteen (13) years, and therefore, according to the method of evaluating experience by defendants, has reached his maximum in experience. Plaintiff is a graduate of Bishop College for Negroes at Marshall, Texas, with the degree of Bachelor of Science and holds a Life Graduate State Certificate issued to him by the State Board of Education of the State of Florida, after an examination as provided by law for teachers in the public schools of Escambia County, Florida. Plaintiff has met the same requirements as those exacted of all other teachers in the public schools of Escambia County, white as well as Negro, and he exercises the same duties and performs

640

services substantially equivalent to those performed by other holders of these certificates, white as well as Negro, yet all white principals in Escambia County who hold said certificates with equal and less experience receive salaries much larger than the salary paid the plaintiff.

"12. White high school principals in the public schools of Escambia County are paid a minimum salary of $200 a month while plaintiff is now receiving $165 a month as salary, and solely because of the practice, usage and custom complained of in paragraph 9, of this complaint, and by the operation of the discriminatory salary schedules described in paragraph 13 and 14 of this complaint the plaintiff and others of the class on whose behalf he sues have been, are, and unless relief shall be granted by this Honorable Court as hereinafter prayed, will continue to be denied, solely by reason of race and color, the opportunity to receive a higher salary equal to that paid to any white teachers or principals similarly situated.

"13. Pursuant to the policy, custom and usage set out in paragraph 10 of this complaint the defendants acting as agents and agencies of the State of Florida have established and maintained a salary schedule used by them to fix the amount of compensation for teachers and principals in the public schools of Escambia County which discriminates against plaintiff and others of the class on whose behalf he sues solely because of their race or color. All teachers and principals in the public schools of Escambia County, including the plaintiff, are being paid and will continue to be paid by defendants pursuant to the following salary schedules adopted, maintained and being enforced by the defendants.

### White
### Teachers

| Elementary | Minimum | Maximum |
|---|---|---|
| Grades 1–4 | $ 66 | $110 |
| Grades 5–8 | 70 | 140 |
| High School | | |
| Grades 9–12 | 114 | 150 |
| Department Heads | 132 | 162 |

### Principals

| Elementary | | |
|---|---|---|
| 1 room | 66 | 110 |
| 2 rooms | 70 | 115 |
| 3 rooms | 82 | 126 |
| 4 rooms | 93 | 143 |
| 5 to 10 rooms | 99 | 148 |
| 10 rooms up | 110 | 165 |
| High Schools | | |
| No rooms stated | 200 up* | |

*Exact amount is to be determined by School Board and Special Tax District trustees.

### Increment Scale

| | |
|---|---|
| Each year's experience | 4 |
| Attendance at Summer school (accredited college) | 5 |
| Each year of normal school or college | 5 |
| Extension work | 3 |
| Master's degree | 5 |

### Colored

(A) Principals and teachers holding Graduate State Certificate based on Master's Degree

(B) Principals and teachers holding Graduate State Certificate based on four years of accredited college work.

(C) Principals and teachers holding Graduate State Certificate based on two years of college work

(D) Principals and teachers holding less than Graduate State Certificate, but who have as much as one full year of college work in a standard university or college

(E) Principals and teachers holding less than Graduate State Certificate and having less than one year college work

### Schedule

| Class | 1st | 2nd | 3rd | 4th | 5th | 6th |
|---|---|---|---|---|---|---|
| A | 90 | 94 | 98 | 102 | 106 | 110 |
| B | 80 | 84 | 88 | 92 | 96 | 100 |
| C | 70 | 73 | 76 | 79 | 82 | 85 |
| D | 65 | 68 | 71 | 74 | 77 | 80 |
| E | 55 | 58 | 61 | 64 | 67 | 70 |

"In addition to the above the principals of elementary schools receive $3 per month for the first 5 teachers in their school, $2 for the next five teachers, and $1 for each additional teacher. (Principals of our two high schools are not based on the above schedule, but have a higher rating).

"The practical application of these salary schedules has been, is and will be to pay Negro teachers and principals of equal qualifications, certification, and experience with white teachers and principals less compensation from public funds solely on account of their race or color."

This complaint is in most respects similar to the complaint filed in the case of Alston v. School Board of City of Nor-

641

folk, and, in passing upon a similar motion to dismiss, the Court of Appeals of the Fourth Circuit, speaking through Circuit Judge Parker, said: "That an unconstitutional discrimination is set forth in these paragraphs hardly admits of argument. The allegation is that the state, in paying for public services of the same kind and character to men and women equally qualified according to standards which the state itself prescribes, arbitrarily pays less to Negroes than to white persons. This is as clear a discrimination on the ground of race as could well be imagined and falls squarely within the inhibition of both the due process and the equal protection clauses of the 14th Amendment." Alston v. School Board of City of Norfolk, 112 F.2d 992, text 995.

Secondly, though defendants admit that the schedule of salaries now maintained and enforced by the defendants is discriminatory as to salaries paid colored teachers in the elementary and high schools, they contend that plaintiff McDaniel does not represent a class because of the fact that he is a principal of a high school and not a teacher therein. This contention must fall as the principals of the high schools and teachers therein and teachers in the elementary schools are all members of the same profession and are required to be possessed of certain qualifications prescribed by the Board.

As to the third contention, the Constitution of the state of Florida requires that the legislature shall provide for a uniform system of public free schools and provide for the liberal maintenance of the same. Art. 12, sec. 1. The legislature has established a system of free public schools; provision has been made for the establishment of separate schools for white and colored children. In section 12 of Article 12, "White and colored children shall not be taught in the same school, but impartial provision shall be made for both." The Constitution provides for a Board of Education and defines its powers; it provides for the appointment of Superintendent of Public Instruction; pro-

vides for the constitutional tax of one mill for the support and maintenance of public schools; provides for the assessment and collection annually by each county for the support of the public free school system; and provides for division of counties into convenient school districts.

In this case there is no statutory salary schedule, but there is a salary schedule established by administrative ruling of an administrative agency of the state, and the prohibitions of the Fourteenth Amendment certainly apply to the acts of such agencies. "The inhibition contained in the 14th Amendment means that no agency of the State, nor of the officers or agents by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws. Whoever, by virtue of public position under a state government, deprives another of property, life or liberty, without due process of law, or denies or takes away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name and for the State, and is clothed with the State's power, his act is that of the State." Ex parte Virginia, 100 U.S. 339, 25 L.Ed. 676.

As pointed out by Judge Chesnut in Mills v. Lowndes, D.C., 26 F.Supp. 792, they are qualified school teachers and have the civil right as such to pursue their profession without being subjected to discriminatory legislation on account of race or color. It is no answer to this to say that the hiring of any teacher is a matter resting in the discretion of the school authorities. Plaintiffs, as teachers qualified and subject to employment by the state, are entitled to apply for the positions, and to have the discretion of the authorities exercised lawfully and without unconstitutional discrimination as to the rate of pay to be awarded them if their applications are accepted.

The court is of the opinion that the motion to dismiss should be denied, and will enter appropriate order denying the motion to dismiss and providing time for the filing of an answer.