**THOMAS v. HIBBITTS et al.**

Civ. A. No. 202.

District Court, M. D. Tennessee,
Nashville Division.

July 28, 1942.

Z. Alexander Looby, of Nashville, Tenn., and Thurgood Marshall, of New York City, and Leon Ransom and William H. Hastie, both of Washington, D. C., for plaintiff, Harold E. Thomas.

W. C. Cherry, City Atty. for City of Nashville, E. C. Yokley, Jr., and Charles G. Blackard, Asst. City Attys., all of Nashville, Tenn., and Myron Evans, of Memphis, Tenn., for defendants.

DAVIES, District Judge.

This cause was tried by the court without a jury, and after hearing all the evidence and argument of counsel, the court hereby makes the following findings of fact and conclusions of law.

### Findings of Fact.

1. The plaintiff, Harold E. Thomas, is colored, a person of African descent and of negro blood. He is a regular teacher in the Pearl Junior High School, a public school located in Nashville, Tennessee, and maintained and operated by the Board of Education of the City of Nashville. He is now completing his sixth year as a teacher in the Public Schools of the City of Nashville, Tennessee, and is paid the sum of $110 per month for his services; this being the amount fixed by the Board of Education for the City of Nashville for negro school teachers in their sixth year of teaching experience

Plaintiff successfully completed the course of instruction provided at Fisk University located at Nashville, Tennessee, which is an accredited college and has been awarded the degree of Master of Sciences from said University. He holds a Collegiate Professional Certificate, which is the highest certificate issued by the Tennessee Board of Education for teaching in public schools of Tennessee, both white and colored. In order to qualify for this certificate, plaintiff met the same requirements as those exacted by the Tennessee Board of Education for all other teachers, white or colored, and he performs the same duties and renders the same services as is required of all other holders of said certificate.

2. The Pearl Junior High School, where plaintiff teaches, is known as a colored school, all teachers employed therein and all students who attend the school are persons of African descent and of negro blood. It is an integral part of the public school system of the City of Nashville, Tennessee, maintained by and operated under the direction of the Board of Education for the City of Nashville.

3. The defendants in this cause are the Board of Education of the City of Nashville, all of its members and the Superintendent of Schools for the City of Nashville, Tennessee, who is an administrative officer of the public free school system of Tennessee. The defendant Board of Education exists pursuant to the laws of Tennessee, as an administrative department of the State of Tennessee, discharging governmental functions. The establishment, maintenance and administration of the public school system of Tennessee is vested in a State Board of Education, a Commissioner, County Superintendent of Education and County and City School Boards. All school teachers in Tennessee, including plaintiff, and other teachers in Nashville, are required to hold teaching certificates in accordance with the rules of certification laid down by the State Board of Education. The duty of enforcing this system is imposed upon the several county and city school boards, including the defendant Board of Education of the City of Nashville. Identical certificates are issued by the State Board of Education to both negro and white teachers.

The Public Schools of the City of Nashville, Tennessee, are under direct control and supervision of the defendant Board of Education, acting as an administrative department or division of the State of Tennessee, and as such, it is required to maintain an efficient system of public schools in Nashville, and to enforce the school laws of the State of Tennessee. It is under the positive duty to enforce regulations for the employment, remuneration, and dismissal of teachers in the City of Nashville.

4. Among the various duties, prerogatives and official acts of the Board of Education of the City of Nashville, is that of employing and fixing the compensation of the teachers in the public schools of the city. It is required under the Constitution of the State of Tennessee to maintain separate schools for white and colored. For many years the Board of Education has employed its teachers on a fixed salary schedule and has maintained separate salary schedules for white and colored teachers. On September 18, 1940, the Board of

Education of the City of Nashville adopted new schedules of salaries for its teachers in the public schools, effective as of September 1st, 1940, and at this time adopted separate schedules for teachers in white schools and in colored schools, which is just another way of saying that it would have a separate schedule for white teachers and colored teachers, inasmuch as only white teachers are employed in the white schools and colored teachers in the colored schools. Under this schedule, a teacher in the Elementary and Junior High Schools, employed in the first year of teaching, is paid $120 per month in the white school, and $95 per month in the colored school; and for the same class of school, a teacher in the fourth year of teaching is paid $135 per month in the white school, and $110 per month in the colored school. Likewise, according to the schedule, a teacher employed for the first year in a senior high school is paid the sum of $140 per month in a white school, and $100 per month in a colored school; and in the fourth year is paid $170 per month in the white school and $115 per month in the colored school. The schedules carry different amounts for teachers on a graduated basis fixed on the basis of services during the first, second, third and fourth years of teaching. Those who have had more than four years of service are apparently paid according to the schedule fixed for the fourth year. But throughout these schedules there is a differential between the salaries fixed for white teachers and colored teachers of every class of school, and also the principals of the school of each class. This difference is considerably in favor of the teachers in white schools or white teachers, running from as much as $25 per month in the salary of teachers in the elementary and junior high schools during their first year of service, to $55 per month difference in the salary of teachers in the senior high schools during their fourth year of service. And in the case of principals in the senior high schools during their fourth year of service, there is a difference of pay according to the schedules in the amount of $150 per month in favor of the principals of the white schools. These schedules are fixed according to the years of service, without regard to the teachers' qualifications or experience, other than the first four years thereof, both in the white and colored schools.

5. The funds used by the Board of Education of the City of Nashville in paying the salary of its teachers are derived in several ways; a certain part of the city tax rate is specifically levied for school purposes, and these funds are used by the Board of Education; the elementary schools participate in a certain part of the county tax rate, which is specifically levied for elementary school purposes, and the Board of Education of the City of Nashville participates in this fund on a pro rata basis determined by the average number of children attending the elementary schools each year. It also participates in a certain fund that is set aside for school purposes by the State of Tennessee.

6. The requirements of eligibility for employment as a teacher in the public schools of Nashville, as fixed by the Board of Education relative to experience, qualifications, etc., are the same for colored teachers as for white teachers.

7. The defendants in their answer state that the discrimination in the amount of salaries paid to white teachers and to colored teachers in favor of the white teachers, is based solely upon the different types of school, that is, colored schools and white schools and does not in any way attempt to make a discrimination in the teachers of the different types of school. This proposition seems to have been more or less abandoned at the trial of the cause where the defense relied upon was that the differential in the pay of the salaries to the teachers was based solely upon an economic condition in that, colored teachers were more numerous than white teachers, their living conditions less expensive, and that they could be employed to work at a lower salary than white teachers. It is also insisted in the answer filed by the defendant that if the Board of Education should see fit to appoint negro teachers in white schools, their salaries would be based upon the race of their pupils, and not as to the color of the teachers. Granting that this could be true in the abstract, yet it is of considerable import that so far no negro teachers have ever been appointed by the Board of Education to teach in white schools. Especially so, in view of the defense relied upon that the applications from colored teachers were far more numerous than from white, and that as an economic proposition colored teachers could be secured to work for a smaller salary than white teachers. The court is

unable to reconcile these theories with the true facts in the case, and therefore finds that the studied and consistent policy of the Board of Education of the City of Nashville is to pay its colored teachers salaries which are considerably lower than the salaries paid to the white teachers, although the eligibility qualifications and experience as required by the Board of Education is the same for both white and colored teachers, and that the sole reason for this difference is because of the race and color of the colored teachers.

### Conclusions of Law.

1. The court has jurisdiction of this cause. 28 U.S.C.A. § 41(14).

2. The rules, regulations, practice, usage and customs of the Board of Education of the City of Nashville, in adopting separate schedules of salaries paid to white and colored teachers, wherein the salaries fixed for white teachers are considerably larger than the salaries fixed for the colored teachers, which said differential is based solely on the ground of race and color, is an unconstitutional discrimination within the inhibition of both the due process and equal protection clauses of the Fourteenth Amendment.

3. The act of the plaintiff in applying for a position as teacher in the public school system and accepting the salary fixed in accordance with the schedules in question, does not estop him from questioning the validity of said schedule of salaries, when it appears that the only basis for the establishment of said schedule of salaries is a discrimination against plaintiff by reason of his race and color.

4. Plaintiff by accepting payment of his salary under said schedules, without having made any protest, prior to the filing of the complaint is not entitled to recover any difference in the amount of salary paid to him and that paid to a white teacher of similar qualifications and experience for any period of time antedating the filing of the complaint, and any additional salary due plaintiff after the filing of the complaint must be adjudicated in a separate proceeding, inasmuch as no amendment was filed by plaintiff asking for a judgment for additional salary due as of the date of trial of the cause.

5. Plaintiff is entitled to a declaratory judgment decreeing that the distribution by the defendants of that portion of the public school fund for teachers' salaries on a basis whereby plaintiff Thomas and other negro teachers employed by the Board of Education of the City of Nashville with equal qualifications and experience and performing essentially the same duties and services as the white teachers, but receiving a smaller salary therefor solely by reason of their race or color, is a denial to the plaintiff Thomas and others similarly situated of the equal protection of the law and due process of law as guaranteed by the Fourteenth Amendment of the Constitution of the United States of America.

6. Plaintiff is entitled, in his own behalf and in behalf of the class whom he represents, to the issuance of an injunction restraining the defendant Board of Education, its officers, agents and employees, from making any discrimination against plaintiff and the class whom he represents in fixing salaries to be paid to school teachers for the next fiscal year and succeeding years on the grounds of race or color.

A decree will be entered accordingly.