**TURNER v. KEEFE, Chairman of Board of Public Instruction, et al.**

**No. 444 Civil.**

District Court, S. D. Florida, Tampa Division.

April 16, 1943.

McGill & McGill, of Jacksonville, Fla., and Thurgood Marshall, of New York City, for plaintiff.

Robert Shackleford, of Tampa, Fla., and Velma Keen, of Tallahassee, Fla., for defendants.

BARKER, District Judge.

The plaintiff, Hilda T. Turner, instituted this action under the Federal Declaratory Judgment Statute, Judicial Code, § 274d, 28 U.S.C.A. § 400, wherein she sought to obtain a declaratory judgment or decree to the effect that the policy, usage and custom of the defendants in adopting, enforcing or maintaining a salary schedule fixing salaries of the plaintiff and other negro teachers at a rate lower than that paid to white teachers of equal qualifications and experience, and performing essentially the same duties and services, solely because of their race and color, was a denial of the equal protection of the laws guaranteed by the Fourteenth Amendment of the Constitution of the United States, and a permanent injunction was sought against the defendants restraining them from paying to the plaintiff or any other colored teacher employed by the said defendants, at less salary than that paid to white teachers with equal qualifications, certification, experience and who filled an equivalent position in the public schools of Hillsborough County, Florida. Plaintiff instituted the action pursuant to Rule 23(a) of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, on behalf of all negro teachers of Hillsborough County, it being alleged that the character of the rights involved were of common and general interest to the members of said class, to-wit, all other negro teachers and principals in the public schools in Hillsborough County. Plaintiff attached to her complaint a copy of the salary schedule which was then in force and effect and under which it was alleged that all teachers in Hillsborough County were then being paid.

In their answer, the defendants specifically denied, among other denials and defenses, that the difference in salaries paid to the class or group represented by the plaintiff, pursuant to the salary schedule then in force, constituted discrimination against the negro teachers and principals. Thereafter the Court permitted the defendants to file five additional defenses subject to a later consideration by the Court, the substance of said defenses being as follows: (1) The higher salaries theretofore paid to white teachers and principals as a group than paid to negro teachers and principals as a group had been occasioned by the substantially larger investment of the white group in acquiring like certificates and years of experience and the higher cost to the white group in maintaining a scale of living commensurate with their respective positions in the educational field; (2) that it had been essential for the defendants to pay higher salaries to the white group than to the negro group in that the former group was required to expend larger sums than the latter to obtain substantially equal economic necessities and it was necessary, in order to main-

tain the educational standards of Hillsborough County that teachers and principals, regardless of race and color, secure sufficient compensation to enable them to live on such scale as to permit them such social and civic standing as to place them in a comparable position of esteem and regard in their community and thereby to enable them, by example, to exert a beneficial influence upon their pupils. (3) That the salaries paid to all teachers had been controlled by the law of supply and demand under which law the defendants had been required to pay higher salaries to the white group than paid to the negro group. (4) That the difference in salaries paid was warranted by the fact that the white teachers and principals as a group were possessed of greater qualifications than were the negroes as a group and that measured in teacher effectiveness, as well as by their value to the educational system of Hillsborough County, the white teachers, as a group, were entitled to the larger measure of compensation so paid them. (5) In the fifth additional defense it was averred that the difference in salaries paid was occasioned by the economic conditions of the respective groups which had necessitated the defendants to pay higher compensation to the white teachers and principals in order to secure their services.

The defendants asked leave to file a sixth amended defense wherein it was alleged that the county is divided into Special Tax School Districts for the purpose of each District being able to supplement the salaries paid by the Board therein, and that as the Trustees of each District have the sole right to determine what supplemental salaries shall be paid, that it is impossible for the defendants to enforce the operation of uniform salary payments to white and colored teachers throughout the county, or in any particular Tax School District, and averring that the relief sought by the plaintiffs can be obtained only by making the Trustees of each district parties defendant. The Court, being of the opinion that the matters alleged did not present a legal defense, refused to permit said defense to be interposed.

A further additional defense was approved and permitted to be filed by the Court wherein it was averred that subsequent to the institution of this action, the Board of Public Instruction of Hillsborough County adopted a new salary schedule, copy of which was attached to said defense, being three pages in length and which contained among its numerous terms and provisions the following paragraph: "All contract teachers shall be rated in three classifications: A–1, A–2, and A–3. Teachers will be rated by a Committee appointed by the County School Board and consisting of the County Superintendent, the Director of Instruction, the Assistant Director of Instruction, the Assistant Director of Instruction, in charge of Negro Schools; the Assistant Director of Instruction, in charge of Rural Schools; and principal of an Elementary School. The rating shall be based on physical health, personality and character; scholarship and attitude; instructional skill and performance".

It was further provided in the schedule that all teachers should be re-rated each year prior to the issuance of contracts and incorporated in said schedule was a scale under which each teacher's qualifications were to be rated as to twenty-nine separate factors, under three general headings of (1) physical health, personality and character; (2) scholarship and attitude; (3) instructional skill and performance, into five different classes. The rating given on the various factors determined whether the teacher would be classified as A–1, A–2, or A–3, the particular classification thus determining the basic salary to be paid. The schedule then provided for certain automatic increments which were fixed by the years of college work which the respective teacher had completed and years of her teaching experience.

It was averred in said amended defense that each teacher, negro as well as white, would be rated under the amended schedule and that the remuneration to be paid would be determined pursuant to the provisions, classification and terms of the schedule, without discrimination as to race and color. Thereafter, during the pendency of this action, said defense was, by leave of court, further amended in certain particulars, the nature of which is not here essential to discuss.

The cause came on for trial by the Court, without a jury, and the Court, after argument by respective counsel, determined that the issue presented by the last amended defense, i. e., presenting the amended salary schedule and its application, would be first tried, and that the Court would reserve trial of the issues presented by the five additional defenses and likewise would

reserve trial on the issue of the existence vel non of discrimination at the time of the inception of the litigation until the determination of the defense presenting the amended schedule, it having been agreed that each teacher, both white and negro, had been rated pursuant to the provisions of the new schedule, the Court considered said defense as amended in that particular.

Counsel for plaintiff conceded that the new schedule was non-discriminatory and fair on its face but denied that it had been administered fairly and without discrimination against negro teachers and principals as a group.

Evidence was thereupon taken before the Court during a three-day session touching upon the manner in which the defendants had administered the new schedule, or stated differently, whether or not the new salary schedule has been so applied as to constitute an unconstitutional discrimination against the negro teachers as a group or class on account of their race and color.

While the method adopted by the defendants is apparently new, nevertheless it provides a yardstick for the uniform determination of salaries without race distinction solely upon (1) physical health, personality and character, (2) scholarship and attitude, (3) instructional skill and performance, (4) years of college attended and (5) years of teaching experience. Although the Court does not assume to be versed either in the philosophy of teaching or in the various methods of determining teacher effectiveness, the method set forth in the new schedule would appear to be sound from an educational standpoint and one that should tend to advance the instructional standards of this county.

The Court particularly notes that the schedule expressly provides for a re-rating of each teacher and principal each year hereafter.

The testimony discloses that the rating of each teacher and principal, both white and negro, was done by E. L. Robinson, County Superintendent, Frank D. Miles, R. L. Carter, Mrs. Mary Kent and J. W. Bates, who constituted the Rating Committee pursuant to official designation by the Board of Public Instruction. While it was established that the experience of each of the members of the Rating Committee was wide and varied in the educational field, it will here suffice to summarize the testimony as to the positions held by them in this county.

E. L. Robinson was principal of an elementary school in 1907, then becoming principal of Hillsborough High School, which position he held until 1925. From said date until 1932 he was Supervising Principal of junior and senior high schools during which time he supervised white as well as negro schools. Thereafter he has been County Superintendent in which latter position he is the administrative officer of the school system of Hillsborough County and has general supervision over all schools in the county, white as well as negro.

R. L. Carter occupied the position of Supervising Principal of all Plant City schools from September, 1935, until January, 1937, where he supervised white as well as negro schools of Plant City and in January, 1937, he was appointed Director of Instruction for Hillsborough County and Supervising Principal of Tampa Schools, which position he has occupied until this date, having general supervision of all Tampa Schools, both white and negro.

J. W. Bates occupies the position of Assistant Director of Instruction, in charge of Rural Schools.

Mary Kent has been connected with the educational system of this county as both teacher and principal since 1915 with the exception of a two year absence and is now principal of Orange Grove School.

Frank D. Miles first became connected with the educational system of Hillsborough County in 1932 as a teacher. After teaching some three years he was appointed principal of one of the schools which position he occupied for two years. In 1937 he was appointed Assistant Director of Instruction and since then he has had full charge and supervision of all the negro schools of this county, to which work he has devoted his full time. Prior to coming to Hillsborough County, Mr. Miles had taught or served as principal in various schools in other sections of this state for some twelve years.

The Committee devoted approximately sixty days to the task of rating the 1118 teachers and principals.

As a result of the new schedule, which went into effect on November 23, 1942, the salaries of 131 white teachers were reduced in a range of from $2.44 to $23.13 per month, and 19 white principals were reduced in a range of from 95¢ to $44.65

per month, and 746 white teachers were increased in a range of from 23¢ to $5.75, and 48 white principals were increased in a range of from 6¢ to $45.32 per month. All of the negro teachers, 157 in number, were increased in a range of from $5.90 to $67.64 per month and all negro principals, 17 in number, were increased in a range of from $18.34 to $109.53 per month. The additional appropriations for the annual budget to meet the increase of white teachers amounted to $10,709.82 and of white principals $3,508.20, making a total of $14,218.02, and the additional appropriations for negro teachers amounted to $50,748.29 and to meet increases in negro principals' salaries the sum of $9,963.18 was required, making a total additional appropriation for negro teachers and principals of $60,711.47. As a result of the new schedule the average salary for negro teachers is approximately 82% of the present average salary for white teachers and the average salary for negro principals is 80% of the present average salary for white principals.

The rating of teachers and principals under the new schedule resulted in the following approximate percentages of the particular group, white or negro:

Class A–1 white teachers 84% negro teachers 6%

Class A–2 white teachers 15% negro teachers 14%

Class A–3 white teachers 1% negro teachers 80%

Class A–1 white principals 97% negro principals 29 7/17%

Class A–2 white principals 2 66/67% negro principals 52 16/17%

Class A–3 white principals 1/67% negro principals 17 11/17%

In view of the long and varied experience of each member of the Rating Committee in the educational field, as disclosed by the testimony, it appears to the Court that the Committee was competent to perform the duties incident to the task which it had been assigned by the Board of Public Instruction.

College degrees conferred upon one and years of teaching experience do not of themselves qualify one for the profession of teaching or of supervising of teaching and do not constitute the sole criteria for admeasurement of teacher worth. In addition to said factors, the ability to impart knowledge to pupils, as well as one's own temperament, patience, instructional skill and performance, disciplinary ability, physical health, personality and character, interest in work, dependability and scholarship, attitude, tolerance, habits and other factors may also be considered and judged.

It is conceded by the Board that errors, no doubt, have been committed in individual instances in rating both white and negro teachers as the system is new, but they state that inasmuch as the schedule requires that the rating be done over each year, such errors of judgment as may have occurred can and will be rectified in the future.

It is argued on behalf of the plaintiff that the ratings given to white teachers by their principals were generally followed by the Rating Committee whereas the ratings given to negro teachers by their principals were generally rejected by the Committee and that said procedure is indicative of discrimination against the negro teachers. However, the testimony discloses that the rating given to the teachers by the principals, whether white or negro, was only one of the factors which entered into the rating which was ultimately determined upon by the Committee and no testimony has been adduced which discloses that the procedure followed by the Rating Committee was either designed to the end of accomplishing discrimination against the negro teachers or that such resulted therefrom.

The Court is not particularly impressed with the results of the plan of the teacher rating the principal and the principal rating the teacher. No doubt, useful information was acquired by the Committee in having the principal who was supervisor of his school and teachers express himself as to the qualifications and ability of his teachers and likewise the expression from the teachers about their principal. However, there is temptation, to which there could be pardonable yielding, for principal and teacher to invoke the rule of reciprocity between themselves and thus render valueless both opinions as to the rating of either.

The testimony is that the Committee had before it data and records pertaining to the teachers and principals which had been collected over a period of years. These, with such other information as was furnished by individual members of the Committee, were discussed in the light of the rating of the teacher by herself or by her principal and given careful consideration, and the final rating was made thereafter by a majority vote of the Committee.

Similar procedure was followed in the ratings of the principals. It may be significant that out of both groups of teachers, white and negro, approximately 14% were classed as A–2. Likewise the fact that 80% of the negro teachers fell into A–3 and 84% of the whites into A–1 may be significant, but these latter figures alone without showing that they, allowing for honest mistakes, do not represent the fair and conscientious effort of the Rating Committee in uniformly applying the rating procedure to white as well as negro teachers and principals, do not prove group discrimination.

From the testimony it appears that the members of the Committee did not give any consideration as to what effect their ratings might have upon the ultimate salaries to be received by either the white or negro teachers and no showing has been made of an arbitrary classification of either of the two groups, and, insofar as the evidence discloses, the percentage results of the ratings were occasioned by the fair and uniform application of the terms and provisions of the schedule to all teachers, white as well as negro.

Some of the negro witnesses, 35 negro teachers having testified before the Court, when asked if they were satisfied, answered they were satisfied with their present salaries, but they were not satisfied with their present rating. It is probably safe to assume that the 135 white teachers whose salaries were reduced are dissatisfied with both their salaries and ratings under the new schedule.

Considering the magnitude and difficulty of the task of the defendants in adopting and administering the new plan and in the rating of more than eleven hundred teachers and principals and allowing reasonably for honest errors of judgment, and further considering that under the express terms of the schedule there will have to be a re-rating of each teacher and principal before issuance of new salary contracts for the school year which commences July 1, 1943, during which period changes and corrections can be made, and considering further the unprejudiced attitude of the defendants, and the members of the Rating Committee, on the witness stand and the impression of the Court that they are desirous of conscientiously endeavoring to administer the new schedule without partiality or discrimination, I find as a fact from the evidence that the schedule has been uniformly applied to all teachers and principals without regard to their race or color and that the salaries fixed thereunder are not discriminatory against negro teachers and principals, as a group or class.

I further find, as a fact, that the rating and classification of teachers and principals, negro as well as white, has been done fairly and without any intention to disregard fundamental principles of uniformity.

It is no doubt true that many of the ratings lack scientific accuracy, inasmuch as several of the factors or qualities set forth in the rating sheet are subjective in their nature, which may have resulted in individual inequalities in the salaries paid. However, the evidence fails to indicate that such inequalities, as may exist are disproportionately numerous among the group or class comprised of negro teachers and principals, nor does the evidence warrant a specific finding that any teacher is being paid less compensation than that to which she is legally entitled. In the event unwarranted or discriminatory individual inequalities exist, the courts are open for the redress of such wrongs, and the schedule itself provides that "any teacher dissatisfied with the rating of the committee shall be given an opportunity to take the teacher examination prepared by the National Committee on Teacher Examinations of the American Council on Education, fee for which shall be paid by the County School Board."

From the pleadings, testimony and voluminous records introduced at the trial, I therefore conclude that the defendants have now in force and effect a salary schedule which is fair on its face and is not discriminatory against the negro teachers and principals of this county, and which said schedule is presently being applied uniformly to all teachers and principals, white and negro alike, without regard to their race or color.

I also conclude that although in the actual rating of the teachers much was left to the mere judgment of the members of the Committee, such fact does not render the procedure unsound from a legal standpoint, as the risk incident to the qualifications of the Committee for their task is one which is necessarily inherent in most, if not all, methods of examination.

I further conclude, as a matter of law, that such differential as now exists be-

tween the salaries paid to negro and white teachers has not resulted from and is not occasioned by an unconstitutional discrimination within the inhibition of the equal protection clause of the Fourteenth Amendment of the Constitution.

In view of my conclusion that the present policy, custom and usage of the defendants in the adoption and enforcement of the present salary schedule is free from unconstitutional discrimination against negro teachers and principals as a group, I see no necessity for determining the now moot question of the existence vel non of discrimination at the times mentioned in the complaint, or determining said issue as to any period prior to the adoption of the present schedule, inasmuch as my conclusion as to such prior period could not affect the degree which would be entered, as same necessarily must be based upon the conditions which are now existent.

Likewise, I see no necessity for passing upon the issues presented by defendants' further additional defenses.

There is no basis in the evidence for the granting of injunctive relief against the defendants.

There remains only the question of taxation of costs. The Court is of the opinion, and so concludes, that inasmuch as the issue of discrimination as of the inception of this action has not been determined, that all of the costs of this proceeding, other than those incident to trial should fall upon the defendants but that the actual trial costs be borne by the plaintiff.

An appropriate judgment and decree can be submitted.