MORRIS (HIBBLER, Intervener) v.
WILLIAMS et al.
No. 12887.

Circuit Court of Appeals, Eighth Circuit.
June 19, 1945.

Thurgood Marshall, of New York City, and J. R. Booker, of Little Rock, Ark. (William H. Hastie, of Washington, D. C., Edward R. Dudley, of New York City, and Myles A. Hibbler, of Little Rock, Ark., on the brief), for appellants.

A. F. House, of Little Rock, Ark. (Baucum Fulkerson and William Nash, both of Little Rock, Ark., on the brief), for appellees.

Luther Ely Smith and Victor B. Harris, both of St. Louis, Mo., and Nanette Dembitz, of Washington, D. C., on behalf of American Civil Liberties Union, amicus curiae.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is a class suit commenced by Susie Morris, a negro school teacher of Little Rock, Arkansas, for herself and on behalf of other teachers and principals in the colored schools of Little Rock similarly situated. The defendants are the Board of Directors and the Superintendent of the public schools of the Little Rock Special School District. The purposes of the action are (1) to obtain a judgment or decree declaring that in violation of the 14th amendment to the Constitution of the United States the defendants are denying to the plaintiffs the equal protection of the laws and (2) for an injunction.

The complaint filed February 28, 1942, alleges that defendants now are maintaining and over a long period of years have consistently maintained the policy, custom and usage of paying negro teachers and principals in the public schools of the city less salary than white teachers and principals possessing the same professional qualifications, licenses and experience and performing the same duties and services as the negro teachers and principals, and that pursuant to such policy the defendants acting as agents of the State of Arkansas, have established and maintained a salary schedule which provides a lower scale of salaries for colored than for white teachers, and that such discrimination is based solely upon race or color.

The defendants in their answer filed March 27, 1942, denied that they maintain a policy, custom or usage in Little Rock of paying negro teachers and principals lower salaries than are paid white teachers and that if such difference in salaries exists it is not based in whole or in part upon race or color but solely on difference in special training, character, professional qualifications, experience, duties, services and accomplishments; and they denied that there exists a salary schedule for teachers in Little Rock, discriminatory or otherwise, in violation of the 14th Amendment.

The case was tried to the court on its merits in September and October, 1942. On March 10, 1944, the court made findings of fact and conclusions of law favorable to the defendants and entered the judgment from which this appeal is taken dismissing the complaint. The court's opinion, filed January 5, 1944, is reported in D.C., 59 F. Supp. 508.

Two issues, both of which were decided by the trial court in favor of the defendants, are presented here for determination. They are:

1. Did there exist in Little Rock a schedule of salaries for teachers in the public schools by which the negro teachers were discriminated against solely on account of race or color?

2. Did there exist a policy, custom or usage to pay negro teachers lower salaries than were paid to white teachers solely on account of race or color?

It was assumed throughout the trial in the district court and in the briefs filed in this court that if either of these questions must be answered in the affirmative such practice, schedule, policy, usage or custom violates the 14th Amendment and that judgment should have been for the plaintiff and the judgment entered should be reversed, unless a salary adjustment made by defendants since the trial in the lower court renders the case moot and requires an affirmance.

■ The question whether the complaint states a cause of action under the 14th Amendment was not discussed by the district court, and we need not discuss it at length. The point was necessarily decided, however, by the court's holding that it had jurisdiction of the parties and of the cause of action. The facts alleged in the complaint and admitted in the answer bring the issue clearly within the jurisdiction of the federal court requiring it to determine whether the defendants have violated the 14th Amendment in the manner charged. State of Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208; Alston v. School Board of City of Norfolk, 4 Cir., 112 F.2d 992; Mills v. Board of Education of Anne Arundel County, D.C., 30 F.Supp. 245; McDaniel v. Board of Public Instruction, D.C., 39 F.Supp. 638; Thomas v. Hibbitts, D.C., 46 F.Supp. 368; Davis v. Cook, D.C., 55 F.Supp. 1004. For an illuminating discussion of the constitutional question involved see the opinion of Judge Parker in the Alston case, supra. See also the able opinion of Judge Underwood in Davis v. Cook, supra.

Article XIV of the Constitution of Arkansas of 1874 provides that "the State shall ever maintain a general, suitable and efficient system of free schools whereby all persons in the State between the ages of six and twenty-one years may receive gratuitous instruction" and that the supervision of the public schools shall "be vested in and confided to such officers as may be provided for by the General Assembly." Under this authority the general assembly has established a free school system (Ch. 147 Pope's Digest of Statutes of Arkansas) and has vested its maintenance and administration in a State Board of Education, a Commissioner of Education, school districts and local superintendents. Act 127 of Acts of 1941 of the General Assembly of Arkansas. The Little Rock Special School District exists as an administrative department of the State, Section 11490 of Pope's Digest of Statutes of Arkansas, and the defendants constitute its Board of Directors and Superintendent.

All teachers in Arkansas, including the teachers in Little Rock, are required to hold teaching licenses in accordance with rules of certification prescribed by the State Board of Education. Act 127 of the Acts of 1941 of the General Assembly. The duty of enforcing the system is imposed upon the Boards of Directors. The defendant Board of Directors controls and supervises the public schools of Little Rock, employs teachers, fixes their salaries and issues warrants for their payment. Section 11535, Pope's Digest of the Statutes of Arkansas. The school funds are derived from both local and state taxation.

The State of Arkansas has provided for the education of negro and white students in separate schools. Pope's Digest, § 11535

(c). The validity of this method of education has been sustained by the Supreme Court when the advantages and facilities afforded the two classes are substantially equal. See Missouri ex rel. Gaines v. Canada, supra, 305 U.S. at page 344, 59 S. Ct. 232, 83 L.Ed. 208. In the city of Little Rock negro teachers are employed for the negro schools and white teachers for the white schools. Both groups are a part of the same system under the supervision of one superintendent and subordinate supervisors or sponsors employed by the Board. There are 86 colored teachers in the system and approximately 320 white teachers. The defendant superintendent was first employed in February, 1941, approximately one year before the commencement of this suit.

The same courses of study and the same textbooks are used in all the schools of the city, both negro and white; and all schools are open the same number of days in the year and the same number of hours in each day.

The Board of Directors, consisting of six members elected annually by the people, is divided into two committees of three members each, a personnel committee and a finance committee. The finance committee prepares the budget and the personnel committee with the assistance of the superintendent allocates the funds allotted for salaries among the teachers. The salaries are recommended to the committee by the superintendent, and the report of committee is submitted to the Board for its approval.

In light of this outline of the situation we shall consider the issues presented on this appeal.

First. Did there exist a discriminatory salary schedule? Upon this question the court found:

"17. There is and was no schedule of salaries prepared, adopted or used by the Board of Directors or authority of the District, fixing salaries of teachers according to the positions they fill as teachers, or otherwise, and no such schedule of salaries was in effect at any time pertinent herein."

While there are some minor conflicts in the evidence upon this point the finding of the court is abundantly supported by the record. The burden was upon the plaintiff to establish the existence of a schedule. There was no evidence that a schedule was ever formally adopted by the Board by reference to which and by reference to the color of a teacher or to his qualifications, experience, or position, his salary could be determined.

Second. Did a discriminatory policy, custom or usage exist based solely on race or color? This question presents a more difficult problem than does the question relating to a formal schedule. On this issue the trial court found:

"18. No policy, usage or custom existed over a long period of time, at the time of the institution of the suit, or thereafter whereby plaintiff or any member of her class, as colored teachers of the Negro race, is discriminated against in salaries solely on account of race or color."

Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that "Findings of fact shall not be set aside unless clearly erroneous." Counsel for defendants construe this to mean that if the findings of the trial court are based upon substantial evidence they will not be set aside on appeal. Such a test is not always determinative. Findings "are not a jurisdictional requirement of appeal", but only "aid appellate courts in reviewing the decision below." See Rossiter v. Vogel, 2 Cir., 148 F.2d 292, 293. While it is idle to try to define the phrase "clearly erroneous" both inclusively and exclusively, United States v. Aluminum Co. of America, 2 Cir., 148 F.2d 416, 433, this court in considering the Rule has frequently construed it to mean that "A finding of fact of a District Court is not clearly erroneous unless it is (1) unsupported by substantial evidence, (2) contrary to the clear weight of the evidence, or (3) induced by an erroneous view of the law." Sbicca-Del Mac, Inc. v. Milius Shoe Co., 8 Cir., 145 F.2d 389, 395; Gasifier Mfg. Co. v. General Motors Corporation, 8 Cir., 138 F.2d 197, 199, and cases cited. Further, a "finding of fact" in the nature of a conclusion, such as the one here under consideration, "depends on the nature of the materials on which the finding is based." Baumgartner v. United States, 322 U.S. 665, 671, 64 S.Ct. 1240, 1243, 88 L.Ed. 1525. In such a case, where constitutional rights are involved, it is necessary for the reviewing court carefully to examine the evidence and determine not only whether the conclusion is supported by substantial evidence, but also whether it is contrary to the clear weight of the evidence, or whether it was induced by an erroneous view of the law.

Upon the trial the practice, custom and usage of the Board as far back as 1926 were reviewed. The pay rolls, the qualifications of teachers, their years of experience, their positions, and the minutes of the Board were introduced in evidence. During most of this period, except during the depression in the 1930's, new negro teachers were paid $615 a year in the elementary schools and $630 in the high school while new white teachers were paid $810 in the lower grades and $900 in the high school. In 1928 the Board resolved that "the white teachers are to receive an increase of $100 for 1928-29 and the colored teachers an increase of $50 for 1928-29." In 1929 a resolution was adopted by the Board that "an advance of $100.00 per year be granted all white teachers, and $50.00 per year for all colored teachers." In 1932 the salaries of all teachers were cut 10%, part of which was restored in 1934.

In March, 1936, the Board decided: "That the contracts for 1936-37 of all white teachers who are now making $832 or less be increased $67.50, and all teachers above $832.50 be increased to $900, and that no adjustment exceed $900 * * *"; and "that the contracts for 1936-37 of all colored teachers who now receive $655 or less be increased $45, and all above $655 be increased to $700, and that no adjustment exceed $700."

During the period covered by the minutes of the Board referred to above there were a few negro teachers receiving salaries ranging up to as high as $1,346.96, which was higher than the rate at which some white teachers were paid. The principal of the colored high school received $2,742.-17, and the principal of the senior white high school received $3,712.50 per year. Counsel for plaintiffs, however, do not contend that salaries should be the same where the position or the duties or the qualifications required are not equivalent.

On two occasions the Board found that there was more money on hand in the teachers' fund than had been anticipated, and it was decided to distribute this balance among the teachers. Approximately $14,-800 was available for this purpose in October, 1941, and $40,000 in June, 1942. A plan of distribution recommended by a committee consisting solely of white teachers was adopted by the Board. The plan provided that the allocations of the funds to the teachers, negro and white alike, should be graduated according to a schedule based upon (1) years of service in the Little Rock schools, (2) training, and (3) present salary. For example, a teacher with 15 years' service, holding a Bachelor's degree, and earning $1600, would be entitled to 3 points for service, 5 points for training, and salary level 4 points, or a total of 12 points. If the teacher were white he would receive from the fund $3 for each point or $36; but if he were a negro he would receive only $1.50 for each point or $18.

That very substantial inequalities have existed between the salaries paid to colored teachers and those paid to white teachers and that such inequalities have continued over a period of years are undisputed. No explanation of these inequalities is found in the minutes of the Board. The superintendent testified that in employing new teachers he recommended a salary in each instance based upon what in his judgment the individual teacher would be worth to the school system; that when he discovered that a teacher was receiving less or more than he merited an adjustment was recommended; that in the short time that he had been connected with the schools of Little Rock he had not had time to make very many corrections; and that in fixing salaries he does not take into consideration the race or color of the teacher. The several members of the Board of Directors testified that they had never heard the race or color of the teachers discussed at Board meetings.

It is conceded that individual merit is a proper basis for determining salaries, but the negro teachers who testified and the defendants do not agree as to the factors which should be considered in arriving at the relative values of teachers. The question is one of relativity because the total amount paid the entire group is limited to the amount of the fund raised by taxation for that purpose. The plaintiff Susie Morris testified that in her opinion only training, or college degrees, and years of experience should be considered in fixing salaries. The superintendent, with whom the Board of Directors agreed, testified that those qualifications are only basic, only a starting point; that many people with college degrees can not teach school; that certain intangible factors enter into the appraisal of a teacher's worth, such as honesty, sympathy, personality, ability to get along with people, ability to give directions, and a number of other things.

In determining the value of teachers it is an evident fact, recognized by the courts, "that because the positions are equivalent the particular persons filling them are [not] necessarily equal in all respects in professional attainments and efficiency; and some range of discretion in determining actual salaries for particular teachers is entirely permissible * * *." Mills v. Board of Education, etc., D.C., 30 F.Supp. 245, 249; Turner v. Keefe, D.C., 50 F.Supp. 647, 651. Teaching is an art; and while skill in its practice can not be acquired without knowledge and experience, excellence does not depend upon these two factors alone. The processes of education involve leadership, and the success of the teacher depends not alone upon college degrees and length of service but also upon aptitude and the ability to excite interest and to arouse enthusiasm. The superintendent is justified in believing that many people with college degrees can not teach school, whether white or colored. It is entirely proper in our opinion when fixing salaries of teachers to consider such intangible factors.

A differential in salaries, therefore, based solely upon differences in individual attainments and worth is not repugnant to the 14th Amendment. It is equally true that a differential based solely on race or color is prohibited.

The crucial question in this case is whether the evidence demonstrates that there existed in Little Rock before the trial and continuing at the time of the trial a policy or custom of paying negro teachers less for comparable service than was paid to white teachers solely on the basis of race or color. We think the record compels the conclusion that such discrimination did exist. The minutes of the Board recited above and the distribution of surplus funds in 1941 and 1942 permit no contrary inference. The explanation that substantially all colored teachers are worth less than substantially all white teachers; that the basic salaries of colored teachers are accordingly lower than the basic salaries of white teachers; and that it is therefore logical that public funds should be distributed to them on a percentage basis is not sustained by the evidence. The explanation appears to be an after-thought designed to meet the exigencies of a defense. No doubt some colored teachers were paid more than other colored teachers holding equivalent positions and some white teachers were paid more than other white teachers in equivalent positions, all on the basis of their respective individual worth; but the minutes of the Board record that the gap between the payments to and the salaries of white and colored teachers was based upon race and color. We have studied the record and the able briefs of counsel carefully and we find it impossible to reconcile the theories of the defense with the undisputed facts.

The plaintiffs objected to the admission in evidence of a rating sheet of all the teachers in the public schools of Little Rock compiled in June, 1942, by the defendant superintendent after this suit was commenced, from ratings made during the preceding months by sponsors under the superintendent's direction. The ratings were not prepared for the purpose of fixing salaries, and were not compiled until after the salaries for the following school year had been fixed. These ratings were offered in evidence because they tended to justify the difference in salaries of white and colored teachers.

The admission of these ratings was discretionary with the trial court. Further, where a case is tried to the court without a jury the mere fact that incompetent or immaterial evidence may be introduced can not be said to be prejudicial. Garden City Feeder Co. v. Commissioner of Internal Revenue, 8 Cir., 75 F.2d 804, 807. A presumption prevails that the court considered only the competent evidence. Policyholder's Nat. Life Ins. Co. v. Harding, 8 Cir., 147 F.2d 851, 855. For our own guidance in weighing or disregarding the rating sheets we have read carefully the testimony of the sponsor who rated the negro teachers, and we attach but little importance to the exhibit. The superintendent has not used these ratings as a basis for fixing salaries, and we do not believe that he would do so after hearing or reading the sponsor's testimony.

In their briefs in this court defendants state that since the trial in the district court there has been a complete readjustment of the salaries of all teachers in the Little Rock public schools, both negro and white, resulting in an increase of salaries of nearly all the teachers, the most substantial increases being in the salaries of negro teachers. Counsel argue that this situation renders the issues moot and that neither a declaratory judgment nor an injunction is now necessary or proper. Schedules showing

some of the increased salaries are attached to the briefs.

■ While we do not question the statement of facts in counsel's brief or their good faith in any way, still no evidence is presented for our consideration. The verified minutes of the Board of Directors showing the date and extent of the changes in teachers' salaries are not set out or in any way made a part of the record. We can not say from the facts stated whether the "policy, custom and usage" complained of have been abandoned or not; there is no assurance given in the statement of counsel that such usage and custom may not be resumed at any time, even though presently abandoned. Under these circumstances this court can not consider the matter and things thus brought to our attention. Since the controversy remains it is the duty of the court to adjudicate the issues presented. They are not moot, and would not be moot even had the changes been made prior to the trial. United States v. Aluminum Co. of America, 2 Cir., 148 F.2d 416, 448; Southern Pac. Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310; Federal Trade Commission v. Goodyear Tire & Rubber Co., 304 U.S. 257, 260, 58 S.Ct. 863, 82 L.Ed. 1326.

More than three years have elapsed since the case was commenced and nearly three years since it was tried in the district court. Two forms of relief were demanded; a declaratory judgment and an injunction. Under the Declaratory Judgment Act, 28 U.S.C.A. § 400, the district court has jurisdiction, when a controversy exists, "to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed." The answer admitted the existence of a controversy concerning the rights of the colored school teachers of the Little Rock Special School District. We have found that the proof establishes the averments of the complaint that the defendants had been and were at the time of the trial maintaining a policy, usage and custom of discriminating against the colored teachers of the district in the matter of salaries solely on account of race or color. The holding of the district court denying a declaratory judgment is accordingly reversed.

■ Under 8 U.S.C.A. § 43, the court has power in equity to redress any citizen deprived of "any rights, privileges, or immunities secured by the Constitution" under "color of any * * * custom, or usage, of any State or Territory." As shown supra the custom or usage of defendants of discriminating against the colored teachers of Little Rock in respect of salaries solely on account of race or color violates plaintiffs' rights secured by the 14th Amendment to the Constitution. There is no doubt that relief by injunction is a proper remedy against such custom or usage. The granting of an injunction is under many circumstances, however, discretionary with the trial court. Owing to the lapse of time since the trial and the changed usage and customs of defendants referred to in their briefs in respect of discriminatory salaries paid teachers on account of race and color an injunction may not be necessary or appropriate. This may be true, especially provided evidence were received showing a good faith determination of the defendants permanently to abandon such discriminatory practices. See Walling v. Shenandoah-Dives Mining Co., 10 Cir., 134 F.2d 395.

The judgment dismissing the complaint is reversed. The case is remanded to the district court with directions to enter forthwith the declaratory judgment prayed for, reserving jurisdiction to enter such further orders as may be required to make the judgment effective, and for further proceedings not inconsistent with this opinion. The district court is also directed that such judgment shall be without prejudice to the right of the plaintiffs, in case they believe their declared rights are violated, to apply for an order requiring the defendants to show cause why the injunction prayed for in the complaint should not be granted, or for such other appropriate relief as they may elect to seek.

Reversed and remanded with instructions.