STATE OF MISSOURI at the relation of GILBERT KENNEDY, Appellant, v. OLIVER T. REMMERS ET AL., Constituting the Board of Police Commissioners of the City of St. Louis.—101 S. W. (2d) 70.

Division One, December 14, 1936.

*Dubinsky & Duggan* for appellant.

128

*Edgar H. Wayman* and *Oliver Senti* for respondents.

HAYS, J.—This case comes to the writer by reassignment. It is an appeal from a judgment of the Circuit Court of the City of St. Louis quashing a writ of certiorari issued by that court at the instance of the appellant designated above (relator in that court), to review the record made by the board of police commissioners of the city of St. Louis upon a charge heard by said board as preferred against appellant, a patrolman of the police force of that city.

As respects such charge and hearing, the record proper as made by the board in relation to the same and set up in the return made by its members to the writ (quoted in part and in part stated in substance) is as follows: First, the charge—

"Charge 1. Violating Rule 10, Section 178 of the Police Manual. (Failing to have permission to engage counsel and file a civil action.)

"Specification 1. In this, to-wit: that the said Patrolman Gilbert Kennedy, attached to Third District, did fail to make the proper formal application and receive permission of the Board of Police Commissioners to retain counsel and file an action in court against said board of police commissioners and others to restrain them from asking him to give 10 per cent of his salary toward unemployment relief; the said Patrolman Kennedy having engaged the law firm of Dubinsky & Duggan to file such action, which is scheduled for hearing on June 30, 1932, in the circuit court. All to the prejudice of the good order and discipline of the police department."

A copy of the charge together with notice of this appellant's suspension from office and notice to appear before the board in the afternoon of June 24, 1932, were served on the evening before. On the afternoon so appointed the appellant appeared before the board in person and by counsel. Said charge and specifications were read in their hearing. Thereupon appellant's counsel filed a number of motions, attacking the jurisdiction of the board to proceed, and predicated same upon provisions, specifically designated, of the State and Federal Constitutions. The board denied the motions, heard evidence, concluded the hearing and took the matter under advisement. Subsequently, on August 19, 1932, the board again met in session, the appellant and his counsel appearing, the board found the appellant guilty of said charges and dismissed him from the force, effective as of the day of suspension, to-wit, June 24, 1932.

Hence this proceeding on certiorari, instituted shortly after.

I. Under the common-law rule the scope of the review by certiorari is never extended to the merits. The action of the inferior body is final and conclusive on every question except jurisdiction or power. The only questions presented are questions of law on the record. [Ferris, Extra. Legal Remedies, p. 212.] While in some jurisdictions the rule has been modified by statute, in this State "This writ, under constitutional provisions, is strictly the common-law writ of that name; it only brings up the record, and can only reach errors or defects which appear on the face of the record of the tribunal to which it is issued, and which are jurisdictional in their nature. [Railroad v. State Board, 64 Mo. 294.]" [State ex rel. Teasdale v. Smith, 101 Mo. 174, 14 S. W. 108; State ex rel. v. Caulfield (en banc), 333 Mo. 270, 273, 62 S. W. (2d) 818, 819, and cases cited.] Moreover, there is no provision of law for preserving matters of exception in proceedings before such boards. [State ex rel. v. Cauthorn, 40 Mo. App. l. c. 96.] So we disregard the transcript of the evidence heard, and of motions filed before the board and attached to their return made to the writ.

II. It is apparent that no lack of jurisdiction may be predicated upon the board's ordinary jurisdiction to entertain and decide the infraction by their appointees of valid rules adopted by the board for disciplining policemen, on charges preferred and after due notice thereof to the individual charged, or his appearance, and an opportunity afforded him to participate in the hearing before the board. [State ex inf. Atty. Gen. v. Hedrick, 294 Mo. l. c. 83, 241 S. W. 402.] In the present instance such was the procedure followed. But the bone of contention, both in the court below and here upon issues duly framed by the petition for the writ and the return made thereto, is the question whether, as appellant contends, the board acted without, or in excess, of their power or jurisdiction in the premises. The solution of this question will involve the application, or otherwise, of certain enactments and certain provisions of the Federal and State Constitutions, as necessary in determining the validity of the board's challenged rule, the question of its validity being the hinge on which the controversy turns. This rule, the constitutional provision from which it derives, and the statutes purporting to delegate to the board the power to make and enforce the rule, will now be stated.

Rule 10, Section 178 of the police manual reads:

"He (referring to every member and employee of the force) shall not file, nor retain counsel for the defense of, an action at law without first obtaining permission to do so from the chief of police with the approval of the board."

The board was by statute created as an administrative agency and endowed with the power to appoint the members of the metropolitan police force and with the power to discharge them. [R. S. 1929, secs. 7540-7548; Rev. Charter of St. Louis, secs. 540-548.] Said Section

7544 contains the power of appointment, specifies the qualifications required of appointees, fixes the duration of their tenure in office, provides for their removal therefrom, and invests the board with jurisdiction in the premises, in the following language found at the close:

"The patrolmen, and turnkeys hereinafter appointed shall serve while they shall faithfully perform their duties and possess mental and physical ability, and be subject to removal only for cause after a hearing by the board, who are hereby invested with the exclusive jurisdiction in the premises."

Section 7547, in delegating additional authority, provides:

"The boards of police are hereby authorized to make all such rules and regulations, not inconsistent with this article, or other laws of the state, as they may judge necessary, for the appointment, . . . discipline, trial and government of the police. . . . All lawful rules and regulations of the board shall be obeyed by the police force on pain of dismissal or such lighter punishment, either by suspension, fine, reduction or forfeiture of pay, or otherwise as the board may judge."

Section 7 of Article XIV of the Constitution of the State reads: "The General Assembly shall, in addition to other penalties, provide for the removal from office of county, city, town and township officers, on conviction of willful, corrupt or fraudulent violation or neglect of official duty. Laws may be enacted to provide for the removal from office, for cause, of all public officers, not otherwise provided for in this Constitution."

Under the wording of that constitutional provision, though the board was clothed with the power of removal, as specifically granted by the statutes and the board's rule made in pursuance, nevertheless they could not exercise the power except for cause, inasmuch as the Constitution expressly requires that removal—other than for "willful, corrupt or fraudulent violation or neglect of official duty"—must be for cause. [State ex rel. Denison v. City of St. Louis, 90 Mo. 19, 22, 1 S. W. 757.] "The reason of this rule is the evident repugnance between the fixed terms and the power of arbitrary removal." [State ex rel. v. Brown, 57 Mo. App. 1. c. 204.] So, the power to remove for cause can be exercised only for the cause specified (Mechem's Public Officers, etc., 452); in the present case, for violating the board's rule, supra, by "failing to have permission to engage counsel and file a civil action" as specified above.

III. Even though it be conceded as contended by the respondents, that when such boards duly adopt rules, or regulations, by virtue of legislative authority, such rules, within the respective jurisdictions, have a similar force and effect by authority of the State to that of an ordinance of a municipality; nevertheless standard rules for the *construction* of statutes, as invoked by the board, do not find application

to the narrow issues presented here for determining the nature and validity of the challenged rule, which is dependent upon (1) constitutional limitations, (2) the reasonableness of the rule, and (3) the applicable rules for determining the matter of reasonableness.

Of these numbered subdivisions we take first (3). As a general rule the question as to whether a municipal regulation or other municipal act is reasonable or unreasonable is one of law for the court where, as here, the evidential facts are not before the court. [43 C. J. 312; St. Louis v. Weber, 44 Mo. 547.] And a court can declare an ordinance unreasonable upon its face, by a mere inspection of the ordinance, if upon its face it is unreasonable (Hannibal v. M. & K. Tel. Co., 31 Mo. App. 23, 32; St. Louis v. Theatre Co., 202 Mo. 690, 100 S. W. 627; City of Windsor v. Bast, 199 S. W. 722; City of Lancaster v. Reed (Mo. App.), 207 S. W. 868); this, even in the absence of a special constitutional inhibition. [Hannibal case, supra, 1. c. 33.] However, every intendment is to be made in favor of the reasonableness of the exercise of municipal power in making regulations to promote its police powers; and unless the regulation is clearly invalid the court ought not so to declare. [43 C. J. 311; Bellerive Inv. Co. v. Kansas City, 321 Mo. 969, 13 S. W. (2d) 628.]

IV. The respondents assert that the board's rule in question has reasonable relation to the public welfare and is valid; that Section 7547, supra, has been construed to mean that an officer can be removed from the force not only for failure to perform police duties, but also for failure to perform the duties of a policeman, one of which duties is to obey the rules of the board as laid down in the manual; in support of this proposition respondents cite State ex rel. McCormack v. McPheeters et al. (Mo.), 178 S. W. 482. In considering those contentions, it is to be observed, first, that it is well established that whether an enactment by statute, ordinance or municipal regulation is fairly referable to the police power, is to be determined upon its face, or to be shown *aliunde*. [Bellerive case, supra, 1. c. 981.] But on certiorari, as here, can *not* be shown *aliunde*, as has been seen.

The McPheeters case, supra, was on certiorari to the board of police commissioners as then constituted, to review the board's record made upon a charge preferred against a police lieutenant for—"1, conduct unbecoming an officer" (contrary to Sec. 1, Art. 20, of the manual), in that,—specification 1, "without the consent and approval of the board, he, being a member of the executive committee of the St. Louis Police Relief Association, knowingly and wrongfully received and accepted from the secretary thereof a specified sum of money, without authorization by said committee;" and, specification 2 (contrary to present Sec. 10, Art. 178—now before us), "without the permission of said board and without having made application for such permission," such money being a part of the funds of the relief association for the payment of sick, veteran, and death

benefits to members of the metropolitan police force. The case was ruled upon what is now Section 7547, supra, which provides: "All lawful rules and regulations of the board shall be obeyed by the police force on pain of dismissal" etc., and upon what is now Section 7544, which provides, among other things, for tenure during faithful performance of duties and possession of mental and physical ability and renders members of the police force subject to removal only for cause, etc. The contentions advanced and ruled were, (a) that the statute (next above) limited the board's power of removal to instances of failure to perform police duty or a loss of mental or physical ability, (b) that the converse construction would render that provision contradictory to another provision of the manual and hence would render the latter null, and (c) that the alleged misconduct did not constitute a failure to faithfully perform police duty. The court (Division Two) held against those contentions. The authoritative effect of the decision is limited to the matters of record there held in judgment, as the opinion was by a majority of the judges concurred in only as to the result. We do not dispute the correctness of the result. Nonetheless we do not regard the decision as pertinent here except in its converse implications. These implications are: One of the statutes authorizes a motion for unfaithful performance of duty; the other statute authorizes the board to adopt reasonable rules to insure reasonably faithful and proper, or "becoming," conduct of the officer in his relations to the board and to the public within the municipality.

The substantive charge was No. 1, to-wit, that of "conduct unbecoming an officer." No. 2, which was identical with the entirety of the present charge against appellant, though it seems to have been considered as a substantive charge, was really an adjunct to the other. The officer's conduct was essentially unbecoming, irrespective of lack of previous application to the board for permission. Had the board in the present proceeding followed that same course, it would be in decidedly better case, we think, in its effort to sustain its position in a proceeding for review upon the reasonableness of the rule applied by the present board. It is readily seen that in point of sufficiency in laying down what would constitute "cause" within the meaning of that constitutional and statutory term, the first stated rule in judgment in the McPheeters case is comprehensive with respect to official conduct; it is in accord with the common understanding; it is in line with the accepted standard of official conduct in general; as formulated it shows on its face unmistakably that it has a distinct and reasonable relation to the public welfare in the district to which it applies, and that it is reasonable and, therefore, valid, as it was held to be against the attack made upon it in that case.

By the very same token, i. e., the distinctive nature, qualities and attributes of *that* rule, it follows as a corollary that challenged Section 10 of Rule 178, considered apart and alone, is lacking in the essential

quality reasonableness, and is void for that reason under the authorities herein above cited on that subject, which are in harmony with the weight of authority in general. With regard to said section it appears on its face to import no definite relation whatever between that section and the police power in any of its phases but, rather, leaves any possible relation wholly to surmise and conjecture. It is argued for the board that this section gives the board the widest possible latitude. That must be conceded. The trouble, however, is that though it ranges in utter abandon, yet, so far as is discernible to our view, it touches nothing tangible in the entire field of possible proceedings at law or in equity to which, through choice or under necessity, a police officer may become a party. He is left no freedom of action whatever in that regard. Adopting the course followed in the Hannibal case, supra, l. c. 33, we are of opinion, and so hold, that Section 10 of Rule 178, is unreasonable upon its face, arbitrary in its character, is a denial of reasonable liberty of action, and transcendent of due bounds of legislative power, irrespective of constitutional provisions State or national.

The case of Hawkins v. Kercheval (Tenn.), 10 Lea, 535, is an illustrative case. It was a proceeding by a police board to remove a policeman from the force in the city of Nashville, who was charged (we quote) ''with insubordination, disobedience of the laws of the city and conduct unbecoming an officer, and in this you have instituted suit against the city, and are attempting to obtain by said suit what you claim as back pay,'' etc. The only offense of the complainant was the bringing of the suit under the circumstances. The case was determined in equity and upon evidence. On appeal the Supreme Court of Tennesseee, *inter alia* (l. c. 543), said: ''His sole offense, in the eyes of the mayor and commissioners, was in instituting a suit against the city and attempting thereby to obtain certain back pay to which he thought himself entitled. It is impossible to see how the bringing of an action by the complainant, in good faith for the assertion of a supposed right can be treated as 'a failure to properly discharge his duties' as a policeman. . . . But in the case before us, there was clearly no charge within the board's power, nor any trial upon such a charge, and the proceedings were utterly void.'' [Cf. McPheeters case, supra.]

Strangely, as it seems, in the present case it is argued for the board that, ''The suit filed by appellant illustrates the wisdom and propriety of the rule applied by these respondents. Apparently the accused officer made up his mind to do nothing to aid the unemployed and sought to justify his niggardly attitude by preventing contributions from others. His petition charges his superiors and the mayor, comptroller and the president and members of the board of aldermen with having entered into a contemptible arrangement which practically amounted to a criminal conspiracy to extort money from him and

other members of the force to aid the unemployed, and although the suit does not purport to have been, brought on behalf of anyone except himself, he prayed the court to enjoin the board and everyone connected with the city government, from accepting contributions (even if voluntarily made) from any employee of the police department for the relief of the unemployed.''

Be that as it may, such facts were not contained in the charge as made, and presumably were not heard. It is elementary law that an action cannot proceed on one ground and a recovery be had on another, or that one cannot be charged with one offense and convicted of another. Besides, it has been seen that no such other facts are brought up by certiorari; we are still considering the rule on its face alone.

V. We are of opinion also that said section contravenes Section 10 of Article II of the Missouri Constitution, which was in due form pleaded in appellant's petition and thereafter asserted and presented for our consideration, together with many other constitutional questions. In the view we take of the case we deem it unnecessary to consider the others. Said section provides: ''The courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice should be administered without sale, denial or delay.''

The Constitution of Ohio contains a provision substantially the same as that just quoted. There came before the Supreme Court of that state a proceeding similar to this one and involving a somewhat similar rule. There the rule or order which was involved specifically provided that a claim could not be urged unless the policeman received permission from the police department to do so. It was construed by the department as forbidding resort to the courts, and the policeman, who had instituted a suit against a railway company without obtaining such permission was, on that account, removed from office upon charges filed and heard. The Ohio court reversed the case on the ground that the placing of a superior officer as an intermediary between the courts and the citizen, to decide whether or not the court should receive the suit, deprived the policeman of his resort to the courts, and therefore deprived him of a constitutional right guaranteed him, substantially to have for injury done him in specified respects remedy by due course of law, and have justice administered without denial or delay. [State ex rel. Christian v. Barry, 123 Ohio St. 458, 175 N. E. 855, 74 A. L. R. 497.]

A word more will dispose of, without the need of mentioning, a suggestion made by the appellant and properly resisted by the respondents: The only judgment which can be rendered on certiorari is either to quash the writ or the record. [Ferris, Extra. Legal

Remedies, sec. 185.] The court below quashed the writ. That judgment being in our view improper, it is by this court reversed and the cause remanded with directions to the circuit court to quash the record as made by the board of police commissioners.

All concur.