**DAVIS v. COOK et al.**

Civ. A. No. 2682.

District Court, N. D. Georgia,
Atlanta Division.

June 29, 1944.

A. T. Walden, of Atlanta, Ga., and Thurgood Marshall, of New York City, for plaintiffs.

J. C. Savage, E. L. Sterne, J. C. Murphy, and Bond Almand, all of Atlanta, Ga., for defendants.

UNDERWOOD, District Judge.

Defendants' motion to dismiss the above cause came on regularly for hearing and was argued both orally and by brief.

For grounds of the motion, defendants allege that no claim upon which relief can be granted has been alleged; that no actual controversy exists between the parties which could sustain a declaratory judgment; that in effect the suit is one against the State of Georgia, an indispensable party, to which it has not consented; and that the Court is without jurisdiction of the suit for want of diversity of citizenship and sufficiency of amount involved and because not authorized by any Federal statute.

For further ground of the motion, defendants assert that the facts alleged are

insufficient to authorize the injunction sought, which if granted would require defendants to adopt new schedules of payments for colored school teachers and in effect amount to a mandatory injunction without providing any specific rule for the guidance of defendants in their future practices.

■ Considering first the allegation of want of jurisdiction, this ground of the motion is overruled, the Court finding that jurisdiction over this cause is conferred upon this Court by Federal statute. 28 U.S.C.A. § 41(1, 14). The provision of Section 41(1) with respect to the value of the matter in controversy is, by its express provision, "not be construed to apply" to Section 41(14) under which this suit was brought. Furthermore, the petition expressly alleges that the value of "the matter in controversy exceeds, exclusive of interest and costs, the sum of $3,000.00." Hague v. C.I.O., 307 U.S. 496, 519, 59 S.Ct. 954, 83 L.Ed. 1423.

■ The petition alleges the following as the basis of the suit. Plaintiff, and other colored teachers and principals of the public schools of Atlanta, for whom plaintiff proceeds in this class suit, are regular teachers in said schools and are required to have, and actually do have, teaching certificates as provided by the State Board of Education and State Superintendent of Schools. (Georgia Code, § 32-1016). These certificates are held by white and Negro teachers alike and the requirements therefor are the same for both white and Negro teachers. Defendants have consistently pursued and maintained for many years, "and are now pursuing and maintaining the policy, custom and usage of paying Negro teachers and principals in the public schools of Atlanta less salary than white teachers and principals in said public school system possessing the same professional qualifications, certificates and experience, exercising the same duties and performing the same services as Negro teachers and principals. Such discrimination is being practiced against the plaintiff and all other Negro teachers and principals in Atlanta and is based solely upon their race or color." By such treatment, plaintiff and all "members of the class on whose behalf he sues are being denied the equal protection of the laws in that solely by reason of their race and color they are being denied compensation from public funds for their services as teachers equal to the compensation provided from public funds for and being paid to white teachers with equal qualifications and experience for equivalent services pursuant to rules, regulations, custom and practice of the Commonwealth acting by and through" defendants. Such acts and practice of defendants deny plaintiff and the class for which he sues due process of law and the equal protection of the laws in violation of the Fourteenth Amendment to the Constitution.

The petition further alleges that "to the extent that defendants in enforcing said discriminatory system are acting under color of statute, regulation, policy, custom or usage, said statute, regulation, policy, custom or usage is void and unconstitutional, and to the extent that defendants may be acting without benefit of statute, regulation, policy, custom or usage, their acts are nevertheless acts of the State, similarly void and unconstitutional," and that defendants have been requested by plaintiff and others of the class he represents to make their salaries the same as those paid other teachers in Atlanta, but that despite these requests, "defendants have refused and continue to refuse to abolish the discriminatory policy, custom and usage complained of."

The above allegations of the petition clearly charge an unconstitutional discrimination against petitioner and the class he represents based solely upon their race or color, and sufficiently state a claim upon which relief can be granted.

The question of the unconstitutionality of such discrimination between white and Negro teachers is comprehensively considered by the Circuit Court of Appeals for the Fourth Circuit in the case of Alston v. School Board of City of Norfolk, 112 F.2d 992, 996, 130 A.L.R. 1506, in which Judge Parker reviewed the decisions which condemn discrimination on account of race or color by a state or its agencies as in violation of the Fourteenth Amendment of the Constitution.

I quote the following from Judge Parker's well considered opinion: "In the later case of Mills v. Board of Education of Anne Arundel County, D.C., 30 F.Supp. 245, Judge Chesnut applied the principle so stated in holding that a discrimination as to pay of teachers in white and colored schools was violative of the constitutional provision, and that a colored teacher might invoke the power of the court so to declare. This we think is in accord with a long line

of decisions which condemn discrimination on account of race in the exercise of governmental power by a state or its agencies. Thus, in Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664, exclusion of colored persons from service on petit juries was condemned as violative of the constitutional provision. In Pierre v. Louisiana, 306 U.S. 354, 59 S.Ct. 536, 83 L.Ed. 757, the same holding was made with respect to grand juries. In Nixon v. Condon, 286 U.S. 73, 52 S.Ct. 484, 76 L. Ed. 984, 88 A.L.R. 458, and Nixon v. Herndon, 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759, discriminations with respect to participating in party primaries were condemned. In Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1291, and Guinn v. United States, 238 U.S. 347, 35 S.Ct. 926, 59 L.Ed. 1340, L.R.A.1916A, 1124, like holdings were made with respect to discrimination relating to the right to participate in elections. Discriminations with respect to the right to own and occupy property were condemned in Buchanan v. Warley, 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149, L.R.A.1918C, 210, Ann.Cas. 1918A, 1201; with respect to Pullman accommodations on railroads in McCabe v. Atchison, Topeka & S. F. R. Co., 235 U.S. 151, 35 S.Ct. 69, 59 L.Ed. 169; with respect to educational facilities, in Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208; with respect to the division of school funds in Davenport v. Cloverport, D.C., 72 F. 689; and with respect to the pursuit of a trade or vocation, in Chaires v. City of Atlanta, 164 Ga. 755, 139 S.E. 559, 55 A.L.R. 230." Alston v. School Board of City of Norfolk, 4 Cir., 112 F.2d 992, 996, certiorari denied 311 U.S. 693, 61 S.Ct. 75, 85 L.Ed. 448. See also the case of Smith v. Allwright et al., 321 U.S. 649, 64 S.Ct. 757.

■■ Two other grounds of the motion assert that no actual controversy exists between the parties which would sustain a declaratory judgment and that the facts alleged are insufficient to authorize the injunction sought. With respect to the latter ground, it may be noted that, under the Declaratory Judgments Act, 28 U.S. C.A. § 400, the Court has jurisdiction "to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed," so that the question as to whether or not an injunction may or may not subsequently issue is not necessarily to be determined upon consideration of the motion to dismiss. Declaratory judgments in similiar cases have been granted by several courts. Alston v. School Board of City of Norfolk, 4 Cir., 112 F.2d 992, certiorari denied 311 U.S. 693, 61 S. Ct. 75, 85 L.Ed. 448; Thomas v. Hibbitts, D.C., 46 F.Supp. 368; McDaniel v. Board of Public Instruction, D.C., 39 F.Supp. 638; and Mills v. Board of Education of Anne Arundel County, 30 F.Supp. 245. As to the first ground, it seems clear from the averments of the petition that not only does an actual controversy between the parties exist (Ætna Life Insurance Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000) but that there is present a justiciable controversy of the gravest importance which affects the constitutional rights of petitioner and the rights and liabilities of defendants.

■■ The ground of the motion most seriously urged is that this suit is in effect one against the State and is in violation of the Eleventh Amendment since the State has not consented thereto.

If this is in substance a suit against the State, this ground is good and the suit may not be maintained; but if not, it must be overruled.

Of course, it is well settled that under the Eleventh Amendment a state cannot be sued without its consent.

Here it has not been sued eo nomine, but this fact is immaterial if the suit is in effect against the State.

However, the authorities are numerous and clear that suits against administrative agencies of the State may be instituted, without making the state a party and without its consent, where they are seeking to enforce an unconstitutional statute or a valid law in an unconstitutional manner.

The Supreme Court has so held in the following language:

"The many claims of immunity from suit have therefore been uniformly denied, where the action was brought for injuries done or threatened by public officers. If they were indeed agents, acting for the State, they—though not exempt from suit— could successfully defend by exhibiting the valid power of attorney or lawful authority under which they acted. Cunningham v. Macon & Brunswick R. R., 109 U.S. 446, 452, 3 S.Ct. 292, 609, 27 L.Ed. 992, 994. But if it appeared that they proceeded under an unconstitutional statute,

their justification failed, and their claim of immunity disappeared on the production of the void statute. \* \* \*

"But a void act is neither a law nor a command. It is a nullity. It confers no authority. It affords no protection. Whoever seeks to enforce unconstitutional statutes, or to justify under them, or to obtain immunity through them, fails in his defense and in his claim of exemption from suit. \* \* \* But neither public corporations nor political subdivisions are clothed with that immunity from suit which belongs to the state alone by virtue of its sovereignty." Hopkins v. Clemson College, 221 U.S. 636, 643, 645, 31 S.Ct. 654, 656, 55 L.Ed. 890, 35 L.R.A.,N.S., 243.

In Smyth v. Ames, 169 U.S. 466, 518 and 519, 18 S.Ct. 418, 423, 42 L.Ed. 819, the Supreme Court said: "It is the settled doctrine of this court that a suit against individuals for the purpose of preventing them as officers of a state from enforcing an unconstitutional enactment to the injury of the rights of the plaintiff, is not a suit against the state within the meaning of that amendment (the Eleventh)," citing cases.

And in the case of Reagan v. Farmers Loan & Trust Company, 154 U.S. 362, 390, 391, 14 S.Ct. 1047, 1051, 38 L.Ed. 1014, the Court made it plain that the rule was the same where state officers sought to enforce a valid law in an unconstitutional manner and held that such suit was not one against the state, the Court saying: "Neither will the constitutionality of the statute, if that be conceded, avail to oust the federal court of jurisdiction. A valid law may be wrongfully administered by officers of the state, and so as to make such administration an illegal burden and exaction upon the individual. \* \* \* They may go beyond the powers thereby conferred, and when they do so the fact that they are assuming to act under a valid law will not oust the courts of jurisdiction to restrain their excessive and illegal acts."

A final question is to be considered. Are the acts complained of such as fall within the condemnation of the Fourteenth Amendment?

■ It is of course recognized that the guaranty of due process of law and equal protection of the law provided in the Fourteenth Amendment is directed against state action and not against private infringement of rights, so that it has to be determined whether or not the acts of de-fendants, in the circumstances charged, constitute state action.

The answer to this question depends upon whether or not such alleged acts of defendants, done under color of the law creating their office and in the performance of their duty as such officers, were, in the eyes of the law, state action, as distinguished from the private acts of an individual.

By the Act of 1937, p. 882, the State of Georgia revised its public school system. Under the provisions of this Act the various independent school systems established thereby were made the "local units of administration" (Georgia Code Ann. § 32-604), and were empowered to execute the provisions of the law "under such rules and regulations as may be adopted by the State Board of Education." (Georgia Code Ann. § 32-606.)

"The board of education of the city of Atlanta is invested with the power and authority of supervising and regulating the schools comprising the public school system of said city, and with the right and authority to make and enforce such rules as are consonant with the law of this state." Leoles v. Landers, 184 Ga. 580, 582, 192 S. E. 218, 220.

The Act empowers the State Board of Education to "annually determine, subject to such variations as in its discretion may be necessary, the number of teachers to be employed for the minimum term" prescribed by the Act (Georgia Code Ann. § 32-609), and to "annually fix a schedule of the minimum salaries which shall be paid to the teachers of the various classes prescribed by them out of the public school funds of the State. (Georgia Code Ann. § 32-613.) The Act further provides that the State Board "shall provide, by regulation, for certifying and classifying the teachers in the public schools" of the State and that no teacher "shall be employed in the public schools unless such person shall hold a certificate from the State Board of Education, certifying to his or her qualifications as such teacher." (Georgia Code Ann. § 32-610.)

The Act expressly empowers the local units to make "rules for the government of such local systems not in conflict with those prescribed by the State Board" (Georgia Code Ann. § 32-611), and to operate the schools for more than the minimum term, to "supplement the State schedule of salaries, and employ additional

teachers not provided for" in the Act. Provided, however, "that teachers in such schools shall receive not less than the minimum salary prescribed by the State Board of Education, * * * unless the State Board of Education, in its discretion, shall otherwise direct." (Georgia Code Ann. § 32-615.)

In my opinion, these provisions of the State law, which provide for a unified system of its educational processes, clearly establish the character of defendants as a State agency and their acts as State action.

This conclusion is supported by the following rulings of the Supreme Court which hold that the action of a duly qualified officer, acting within the scope of his authority, constitutes State action, even though the particular acts complained of may not be authorized.

"Whoever, by virtue of public position under a State government, deprives another of property, life, or liberty, without due process of law, or denies or takes away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name and for the State, and is clothed with the State's power, his act is that of the State." Ex parte Virginia, 100 U.S. 339, 347, 25 L.Ed. 676.

"And the action of prosecuting officers on behalf of the State, like that of administrative officers in the execution of its laws, may constitute state action within the purview of the Fourteenth Amendment. That amendment governs any action of a state, 'whether through its legislature, through its courts, or through its executive or administrative officers.'" Mooney v. Holohan, 294 U.S. 103, 112, 113, 55 S.Ct. 340, 342, 79 L.Ed. 791, 98 A.L.R. 406.

This is true where the officer acts without specific authority to do the particular acts alleged and also where such acts are expressly forbidden by State law.

"But acts done 'by virtue of a public position under a State government, * * * and * * * in the name and for the State' Ex parte Virginia, 100 U.S. 339, 347, 25 L.Ed. 676, are not to be treated as if they were the acts of private individuals, although in doing them the official acted contrary to an express command of the state law. When a state official, acting under color of state authority, invades, in the course of his duties, a private right secured by the Federal Constitution, that right is violated, even if the state officer not only

exceeded his authority but disregarded special commands of the state law." Iowa-Des Moines Bank v. Bennett, 284 U.S. 239, 245, 246, 52 S.Ct. 133, 135, 76 L.Ed. 265.

Referring to the Fourteenth Amendment, the Supreme Court said, in Home Telephone Company v. Los Angeles, 227 U.S. 278, 287, 33 S.Ct. 312, 315, 57 L.Ed. 510: "Here again the settled construction of the Amendment is that it presupposes the possibility of an abuse by a state officer or representative of the powers possessed, and deals with such a contingency. It provides, therefore, for a case where one who is in possession of state power uses that power to the doing of the wrongs which the Amendment forbids, even although the consummation of the wrong may be within the powers possessed, if the commission of the wrong itself is rendered possible or is efficiently aided by the state authority lodged in the wrongdoer. That is to say, the theory of the Amendment is that where an officer or other representative of a state, in the exercise of the authority with which he is clothed misuses the power possessed to do a wrong forbidden by the Amendment, inquiry concerning whether the state has authorized the wrong is irrelevant, and the Federal judicial power is competent to afford redress for the wrong by dealing with the officer and the result of his exertion of power."

To this list of cases should be added the recent case of Smith v. Allwright et al., 321 U.S. 649, 64 S.Ct. 757, 764, in which the Supreme Court held that the action of the Democratic Executive Committee of the State of Texas, in excluding Negroes from participation in primaries of that party, was State action and discrimination in violation of the Fourteenth Amendment. The jurisdiction of the Federal Court was upheld in the following language: "We are thus brought to an examination of the qualifications for Democratic primary electors in Texas, to determine whether state action or private action has excluded Negroes from participation. Despite Texas' decision that the exclusion is produced by private or party action, Bell v. Hill, supra, Federal courts must for themselves appraise the facts leading to that conclusion. It is only by the performance of this obligation that a final and uniform interpretation can be given to the Constitution, the 'supreme Law of the Land.'"

For the reasons above set out, and upon the authorities cited, I am of the opinion

that the petition alleges a claim upon which relief can be granted; that this Court has authority to entertain the suit for declaratory judgment; that the suit is not one against the State and that the State is not an indispensable party; that the acts complained of constitute State action and come within the prohibition of the Fourteenth Amendment; and that the motion to dismiss should be overruled.

Whereupon, it is considered, ordered and adjudged that said motion to dismiss be and hereby is overruled on all grounds.