DANIEL KING, ROBERT GOLDSMITH, ALBERT DALLAS, JOHN R. JUDGE, TOBIN ANDERSON, JULIUS HOFF, CHESTER WALK, JOHN ROONEY and FRANK DEMPSEY, for and on Behalf of Themselves and All Other Patrolmen, Sergeants and Turnkeys of the Metropolitan Police Force of the City of St. Louis, Similarly Situated, Appellants, v. H. SAM PRIEST, THOMAS H. COBBS, FRANCIS L. GEORGE, BEN. L. LIBERMAN and ALOYS P. KAUFMANN, Constituting the Board of Police Commissioners of the City of St. Louis.—No. 39954.—206 S. W. (2d) 547.

Court en Banc, November 10, 1947.

Rehearing Denied, December 8, 1947.

*Hay & Flanagan, S. D. Flanagan* and *E. D. Franey* for appellants.

72

*J. E. Taylor*, Attorney General, *Arthur M. O'Keefe* and *W. O. Jackson*, Assistant Attorneys General, *Frank P. Motherway, George L. Stemmler* and *James V. Frank* for respondents.

74

[548] DALTON, C.—This is a class action by five patrolmen and four sergeants, members of the Metropolitan Police Force of the City of St. Louis, for and on behalf of themselves and all other patrolmen, sergeants and turnkeys of the Metropolitan Police Force of the City of St. Louis, similarly situated, for a declaratory judgment to the effect that Rule 23, Sec. 342 of the Police Manual adopted by the Board of Police Commissioners of the City of St. Louis, prohibiting the members of the force from becoming members of a union of members, is unreasonable, arbitrary, illegal, unconstitutional and void; and that plaintiffs and others on whose behalf the suit is prosecuted are not subject to disciplinary action for violation of the rule. Plaintiffs further asked for a permanent injunction, enjoining defendants from instituting disciplinary action against plaintiffs and those on whose behalf the suit is brought and from otherwise enforcing the rule, and for other relief. Defendants filed a motion to dismiss, which motion was sustained, and judgment of dismissal was entered. Plaintiffs have appealed.

[549] The allegations of the petition are substantially as follows: That, on December 28, 1928, defendants, purporting to act under the authority of a statute, to-wit, what is now Sec. 7695 R. S. 1939, adopted a Manual of Rules and Regulations for the government and discipline of the Metropolitan Police Department of the City of St. Louis, including Rule 23, Sec. 342, as follows: "All members and employees of the Force are forbidden, under pain of dismissal to participate in the organization of or to become members of any association, meeting, union, or any organization of members or employees other than" certain authorized relief, funeral and pension fund associations therein named.

That on or about October 20, 1945, certain patrolmen and others of the Force "deeming it desirable that the patrolmen, sergeants, turnkeys and civilian employees of the Metropolitan Police Department of the City of St. Louis organize for the purpose of bettering their working conditions and seeking redress of certain existing grievances in connection with their employment, and for the purpose of improv-

ing the relations between them and the Board of Police Commissioners of said City, applied to the American Federation of State, County and Municipal Employees for a charter for a local union of said American Federation, and that said charter was thereafter duly issued constituting the charter members therein named, and their successors, Local Union No. 549 of the American Federation of State, County and Municipal Employees (hereinafter referred to as Local No. 549).

. . . That 638 patrolmen, 30 sergeants, 10 turnkeys, and 145 other employees of the Metropolitan Police Department of the City of St. Louis have applied for membership in Local No. 549, and have been duly accepted and admitted as members of said Local''; and that plaintiffs are the officers of Local No. 549.

That on November 29, 1945, defendants adopted a resolution to the effect that Rule 23, Sec. 342, is valid and should be vigorously enforced; and that it be resolved as follows:

''That all members and employees . . . who are members of or who have participated in the organization of, or who have made application to join Local No. 549 . . . be and they are hereby notified . . . that each of them is directed to file . . . a statement in writing as to whether or not he has resigned from membership in the above-mentioned union, or in case he has applied for membership, whether he has withdrawn his application for membership in said union. The said statement in writing shall be filed by him not later than midnight December 5, 1945. . . . Members who have not filed such written statements within the time above stated will be subject to disciplinary action for violation of the above-mentioned rule. . . .''

That in accordance with said resolution defendants intend ''to break up and destroy the aforesaid union by intimidating and coercing the members thereof to resign therefrom . . . and by threatening disciplinary action''; that plaintiffs and others have refused to resign from said local and, if Rule 23, Sec. 342 is valid, are all subject to disciplinary action for violation thereof ''by reason of having become members of said local and having refused to resign as members thereof''; and that charges were preferred and heard by defendants against certain officers of Local No. 549, for violation of Rule 23, Sec. 342 and said Patrolmen were dismissed from the Police Force of the City of St. Louis on December 19, 1945.

Concerning the union, it is alleged: ''That the American Federation of State, County and Municipal Employees is a labor union affiliated with the American Federation of Labor, its subordinate locals, to which it grants charters, having as members various employees, including policemen, of states, counties and municipalities in the United States . . . ''; that on the 24th day of March, the governing body of the American Federation of State, County and Municipal employees

adopted a motion "directing that a no strike provision be included in all charters issued to affiliated local unions of said Federation which comprised police officers, and that pursuant to said action a clause was included in the Charter issued to Local No. 549, providing that said charter was issued with the understanding of [550] the parties that it would be revoked immediately if the members of Local No. 549 should call or participate in a strike or refuse to perform their duties as police officers. . . . "

That the Constitution of Local No. 549 duly adopted by a vote of its members at a meeting held on January 14, 1946, and duly approved by the Governing body of the American Federation of State, County and Municipal Employees, contains the following articles relative to the objects of said local and the methods of obtaining such objects, towit: The objects of the local union are to unite "for mutual welfare, protection and advancement . . . to advance the general social and economic welfare of employees . . . within the jurisdiction of the American Federation of State, County and Municipal Employees to work for the establishment and maintenance of fair wages, hours and working conditions for all employees of the St. Louis Police Department, including civilian employees"; and that "the methods of obtaining the objects of this Local Union shall be by petitioning the Board of Police Commissioners of the City of St. Louis, by petitioning the Legislature of the State of Missouri, and by other lawful means, provided, however, that the members of this Local Union shall never strike or threaten to strike for any reason whatsoever."

"That said Constitution of Local No. 549 contains the following Article relative to the performance by the members of Local No. 549 of their duties as members and employees of the Metropolitan Police Force of the City of St. Louis," towit, that "the oath taken by members of this Local Union on becoming members of the Metropolitan Police Force of the City of St. Louis and the duties of members of this Local Union as members or employees of said Metropolitan Police Force shall come first and be superior to any obligation to this Local Union or the American Federation of State, County and Municipal Employees, or to any other organization. All members of this Local Union are obliged at all times to perform their duties as members and employees of the Metropolitan Police Force of the City of St. Louis diligently and faithfully, without partiality or prejudice."

That said Constitution of Local No. 549, dealing with amendments, provides that no amendment shall be made "to authorize the members of this local union to strike, or to threaten to strike, and can never be amended so as to place the obligation of the members of the local union to this local union, or to the American Federation of State, County and Municipal Employees, or to any other organization before

their obligation and duties as members or employees of the St. Louis Police Department. . . . This constitution and all amendments shall be subject to approval by the General Executive Board of the American Federation of State, County and Municipal Employees.'' Other allegations of the petition need not be set out.

Defendants' motion to dismiss plaintiffs' petition, which motion was sustained, alleged that the court had no jurisdiction over the subject matter of the action; that no actual justiciable controversy existed; that the petition did not state facts sufficient to entitle plaintiffs to the relief asked, nor to any relief; and that it had failed to state a claim upon which relief could be granted.

■ Appellants first contend that, on the facts stated, a proper case was made for a declaratory judgment; that a suit for a declaratory judgment is a particularly appropriate method for the determination of controversies relative to the construction and validity of statutes, ordinances, and the orders of administrative boards and agencies; that the controversy shown, between appellants and respondents as to the validity of Rule 23, Sec. 342 of the Police Manual, is a justiciable controversy, which may be determined in a suit for a declaratory judgment; that the right to a declaratory judgment was shown independent of the right to relief by injunction; and that the trial court erred in sustaining the motion to dismiss.

Respondents contend that the petition fails to show a justiciable controversy under the Declaratory Judgment Act, Secs. 1126-1140 R. S. 1939, ''because it contains no allegations which authorize the court to take jurisdiction.'' Respondents' theory is that the Declaratory Judgment Act is a procedural statute; that the act did not create new substantive rights; that [551] it did ''not confer jurisdiction upon courts to act in cases where they would not otherwise have jurisdiction''; that it did ''not enlarge the jurisdiction of the court'' nor give to appellants any new rights [Borchard on Declaratory Judgments (2nd Ed.) p. 233]; that ''the jurisdiction to hear and determine the rights and status of officers of the police force of the City of St. Louis has been lodged in an administrative board''; and that the petition ''contains allegations which preclude the court from taking jurisdiction because exclusive jurisdiction is lodged in the Board of Police.''

The petition alleged the existence of a particular rule adopted by the respondents; that the rule forbids members of the police force from joining a union; that the respondents consider the rule reasonable, valid and enforceable; that appellants and others, subject to the rule, have joined a union; that respondents have enforced the rule against others and have expressed their intention of enforcing the rule against appellants; that, on the facts stated, the rule is arbitrary, unreasonable, unconstitutional, and void; and that the

enforcement of the rule against appellants will cause irreparable damage. Appellants ask a determination of the validity of the rule and an injunction against its enforcement. The petition clearly shows that an actual controversy exists as to the validity of the rule. It sufficiently shows a state of facts presenting issues ripe for determination. The court is presented a controversy, between parties with adverse interests, admitting of specific relief by way of a declaratory judgment, which will be conclusive in character and determinative of the issues involved. City of Joplin v. Jasper County, 349 Mo. 441, 161 S. W. (2d) 411, 412. "The act furnishes a particularly appropriate method for the determination of controversies relative to the construction and validity of statutes and ordinances." City of Joplin v. Jasper County, supra, and authorities cited. The rule adopted by respondents, under the authority granted by Sec. 7695 R. S. 1939, has somewhat the force and effect of an ordinance of a municipality and, whether or not the rule is inherently invalid, or invalid in its application to appellants, may properly be determined by a declaratory judgment. Borchard, Declaratory Judgments, (2nd Ed.), pp. 875, 909, and cases cited. The matter of determining the validity of the rule was not a matter within the exclusive jurisdiction of the respondents.

The trial court had the right in a proper case, independent of the Declaratory Judgment Act, to declare a rule or regulation of respondents to be void. State ex rel. Kennedy v. Remmers, 340 Mo. 126, 101 S. W. (2d) 70. An administrative officer or agency proceeding or threatening to proceed without jurisdiction and in excess of powers granted may be restrained. Carson v. Sullivan, 284 Mo. 353, 223 S. W. 571; State ex rel. Brokaw v. Board of Education of City of St. Louis (Mo. App), 171 S. W. (2d) 75, 83. The first section of the Declaratory Judgment Act, Sec. 1126 R. S. 1939, expressly provides that the courts "shall have power to declare rights, status, and other legal relations *whether or not further relief is or could be claimed. . . . The declaration may be either affirmative or negative in form and effect. . . .*" (Italics ours.) In determining whether the court has jurisdiction to determine the validity of the rule under the Declaratory Judgment Act, it is immaterial whether appellants are entitled to the requested injunction or whether they are entitled to a judgment that the rule is void. Davis v. Cook, 55 F. Supp. 1004, 1007; Black v. Little, 8 F. Supp. 867, 870; Sec. 1126, supra. An action for a declaratory judgment was a proper one under the facts stated in the petition. Smith v. Pettis County, 345 Mo. 839, 136 S. W. (2d) 282, 285; Liberty Mutual Ins. Co. v. Jones, 344 Mo. 932, 130 S. W. (2d) 945. See, United Public Workers v. Mitchell, 67 S. Ct. 556, 91 L. Ed. 509, 518; Declaratory Judgments, Hyde, 26 W. U. L. Q., p. 468. The court should have entertained

the action and determined the validity of the rule. If, as a matter of law, the rule was not unreasonable, arbitrary, unconstitutional or void, and, if under the facts stated in appellants' petition, appellants were not entitled to a declaration of invalidity or other relief, it was unnecessary to hear any evidence. The court should have declared the rights of the parties without further delay. The court erred [552] in sustaining the motion to dismiss and in not entering a judgment declaratory of the rights of the parties with reference to the questioned rule.

Under the facts stated in the petition, is Rule 23, Sec. 342, supra, wholly unreasonable? The Board of Police Commissioners of the City of St. Louis is an administrative agency created by statute and endowed with the power to appoint, discipline and control the members of the Metropolitan Police Force. Section 7689 et seq., R. S. 1939; State ex rel. Kennedy v. Remmers, supra, (340 Mo. 126, 101 S. W. (2d) 70, 72). Statutory provision has been made concerning the selection of the members of the police force, their rank, number, qualification, promotion, pay, duties, hours of employment, discipline and removal. Sec. 7691-7696 R. S. 1939. By Sec. 7711 R. S. 1939, it is expressly provided that the members of the police force shall be officers of the city and also officers of the State of Missouri. The board is expressly authorized "to make all such rules and regulations, not inconsistent with this article, or other laws of the state, as they may judge necessary, for the appointment, employment, uniforming, discipline, trial and government of the police, . . . All lawful rules and regulations of the board shall be obeyed by the police force on pain of dismissal or such lighter punishment, either by suspension, fine, reduction or forfeiture of pay, or otherwise as the boards may adjudge." Sec. 7695 R. S. 1939. Appellants alleged that the board, purporting to act under the authority of Sec. 7695, supra, adopted the rule, the validity of which is here called into question.

Appellants contend that the rule is unreasonable (on its face) "as barring membership in all unions irrespective of whether they are or are not inimical to the discipline and efficiency of the police department"; and that "the rule can only be sustained if membership in *any* union can, as a matter of law, be said to be detrimental to the proper functioning and efficiency of the police department." We are concerned only with the reasonableness of the rule as applied to appellants. Turner v. Kansas City, 354 Mo. 857, 191 S. W. (2d) 612, 617.

In view of the broad authority granted respondents by statute, supra, and the admitted adoption of the rule pursuant thereto, the rule must be regarded as prima facie reasonable. State ex rel. Kennedy v. Remmers, supra, (340 Mo. 126, 101 S. W. (2d) 70, 73); State ex rel.

O'Bannon v. Cole, 220 Mo. 697, 707, 119 S. W. 424 (school regulation) ; State ex rel. Horton v. Clark, 320 Mo. 1190, 9 S. W. (2d) 635, (health regulation) ; 43 C. J. 311, Sec. 323. The burden rested upon appellants to plead facts to show the invalidity of the rule. City of St. Louis v. United Rys. of St. Louis, 263 Mo. 387, 455, 174 S. W. 78, 94. Only in a clear case will the courts interfere on the ground of unreasonableness. Wagner v. City of St. Louis, 284 Mo. 410, 417, 224 S. W. 413, 415; Ex parte Lockhart, 350 Mo. 1220, 171 S. W. (2d) 660, 664. While a court can declare a rule of an administrative agency unreasonable upon its face by a mere inspection of the rule, if the rule upon its face chances to be one of that character, yet courts act cautiously in such matters and, in view of the broad authority and discretion granted to the board under the terms of Sec. 7695, supra, and the common knowledge and general understanding as to the meaning of the term "union," as used in the rule, we think the board was in a far better position to determine the necessity, desirability and reasonableness of the rule than the court, unless the facts bearing upon the reasonableness of the rule should in some manner be presented to the court. See, City of St. Louis v. St. Louis Theatre Co., 202 Mo. 690, 699, 100 S. W. 627 (concerning ordinances) ; Stegmann v. Weeke, 279 Mo. 140, 214 S. W. 137, 138; Deskins v. Gose, 85 Mo. 485, 487 (rules for governing of school children). Accordingly, we decline to hold that the rule is unreasonable on its face.

Was the rule unreasonable as applied to appellants? This question requires a careful review of all of the facts stated in the petition, as hereinbefore set forth, as well as a review of the provisions of the several statutes referred to. It will be unnecessary to restate these facts, or to quote [553] the several statutes, but they must be kept in mind.

Appellants concede that the evidence, if heard, would have been in line with the allegations in the petition concerning Local No. 549. Appellants contend that the rule is unreasonable "as applied to the factual situation disclosed by the petition; that it bears no reasonable relation to any of the subjects concerning which the Board of Police Commissioners has authority to adopt rules and regulations; and that it is in excess of the power conferred upon such board." Appellants insist that, in view of the particular kind of a union, which the allegations in the petition show Local No. 549 to be, membership in Local No. 549 could not possibly have any deleterious effect upon the proper functioning and discipline of the police department; that the absolute prohibition and the penalty provided by the rule have no reasonable relationship to the discipline and government of the police (Sec. 7695, supra) ; and that the rule, as applied to appellants under the facts alleged, is unreasonable, arbitrary and capricious.

Appellants point out and particularly emphasize that the members of this local union cannot strike or threaten to strike; that the oath taken as members of the police force shall come first and be superior to any obligation to the union; and that the members are required to perform their duties as members of the police force diligently and faithfully, and without partiality or prejudice. Respondents, in reply, urge that it is a matter of common knowledge that labor unions, not only exercise the right to strike and threaten to strike, but have and exercise other rights, such as the right to bargain collectively, to enter into closed shop agreements and to picket, matters not denied to appellants by the charter of Local No. 549. Appellants reply that these matters are mere ''red herrings'' drawn into the case to becloud the simple issue whether or not a rule, which prohibits members of the police force from joining a labor union, such as Local No. 549 is alleged to be, and which authorizes the dismissal of a policeman merely because of his membership in such a union, is a reasonable rule and within the authority of respondents.

Appellants concede that ''the right to bargain collectively, as the term is ordinarily understood, does not exist in the case of public employees on account of the legal restrictions upon the authority of the administrative officers''; and that ''public employees belonging to a union . . . do not have the right to bargain collectively with their employer, whether it be the City, County or State, as do members of unions who are employed in private industry.''

Appellants further concede that ''governmental employees should not be permitted to contract for the closed shop''; and that ''obviously opportunity for government employment should be extended to all citizens irrespective of whether they are or are not members of a union.'' With reference to the right of members of Local No. 549 to picket the Board of Police Commissioners, appellants say that ''such picketing would no doubt, constitute conduct unbecoming an officer and would be ground for discipline.''

Appellants urge that, without collective bargaining in its technical sense, ''the union can, by publicity, direct public attention to conditions that need correcting''; that it can ''seek legislative action''; that ''it can represent individuals in administrative procedure, and prevent discriminatory and arbitrary practices''; and that ''the presentation of grievances to the Board of Police Commissioners in an orderly, dignified and respectful manner,'' and the ''presentation of grievances to the legislature, whether they be for the correction of salary rates or working conditions,'' cannot be injurious to the good order and discipline of the Police Department or detrimental to its ''efficiency and smooth functioning.''

Appellants' position further is that ''the petition clearly shows that the only purpose of this union is to unite the employees of the

Police Department for mutual welfare, protection and advancement, to advance their general social and economic welfare and to work for the establishment and maintenance of fair wages, hours and working conditions''; and that ''any sources of friction and dissatisfaction among the members of the force'' can be eliminated so as to ''improve the morale and efficiency of the department as a whole.'' Appellants finally say, ''this court cannot say on the face of [554] the petition, without any evidence, that any harmful results would ensue from membership in this union.''

Appellants concede that in determining the issue of reasonableness of the rule in question, we are not limited alone to the detailed facts alleged in the petition, but may take judicial notice of material facts of common knowledge. 37 Am. Jur., Municipal Corporations, Sec. 173, p. 803. We may further consider the purpose and effect of the questioned rule.

The petition alleged the purpose for which the union was formed, the objects of its existence, as shown by its charter, and the methods by which it expects to obtain its objects. In accordance with these allegations, the court, of course, knows what a labor union is, the type of organization, the ordinary purposes for which it exists and how it ordinarily functions and operates. It is further a matter of common knowledge that some of the most common methods used by labor unions to accomplish their purposes are strikes, threats to strike, collective bargaining agreements, closed shop agreements, picketing, etc. It is clear that all of the rights and powers ordinarily inherent in a labor union would exist actually or potentially, in Local No. 549, regardless of the form of its charter and the present admissions of appellants. We may not assume that these available powers would not be exercised. Only the first two methods are excluded by the charter of Local No. 549, although appellants admit that the exercise of these other rights, guaranteed to labor unions in private industry by many decisions, have little or no place whatsoever when applied to the particular public employment in which appellants are engaged.

It appears from the petition that Local No. 549 received its charter and authority to function as a labor union from the American Federation of State, County and Municipal Employees; that said organization is a labor union affiliated with the American Federation of Labor; and that such outside organizations control the policy of Local No. 549, since its constitution and all amendments are subject to the approval of the governing body, or General Executive Board of the American Federation of State, County and Municipal Employees. The petition, therefore, shows upon its face that the appellants and the others on behalf of whom the suit is brought have sought assistance from outside their own membership; that they have applied to and received a charter from an outside organization; and that such

other outside organization is further affiliated with a nation wide labor organization. That such outside organization will control and direct the policy of Local No. 549 must be conceded. The court will further take judicial notice of the cooperation between labor unions, of the fact that members of one union ordinarily refuse to cross the picket line of another union and of the control ordinarily exercised by national labor organizations over the local organizations.

Members of the police department are sworn officers of the law, whose duty it is to enforce the law equally and without fear or favor. The legislature recognized the necessity for order, discipline and authority in the police force. It provided for a semi-military organization, with officers and men of different rank, and granted express authority to the Board to make rules and regulations for the *discipline* and *government* of the police. We think the rule in question bears a direct relationship to both the discipline and the government of the police force. See, Brownell v. Russell, 76 Vt. 326, 57 Atl. 103, 104, (removal of police from active politics).

"A police force is peculiar, sui generis, you may say, in its formation and in its relation to the city government. It is practically an organized force resembling in many respects a military force organized under the laws of the United States and equally as important as to the functions it is required to perform. . . . It is a department which requires that the members of it shall surrender their individual opinion and power to act, and submit to that of the controlling head just as much as the common soldier must surrender his own opinion and power of action to that of his commanding officer. And there is the same necessity of discipline, of regulation existing in the police department that exists in regard to the military department. Strict discipline must be enforced, and it must be enforced in a manner that is effective, and without the [555] supervision or regulation of any other department of state, and particularly, without any attempt on the part of the judicial department (which is a branch of the government entirely distinct and separate from the executive department), to regulate it in any way, and, particularly, to regulate its discipline." O'Regan v. City of Chicago (Chicago Legal News, Vol. 37, p. 150); Coane v. Geary, 298 Ill. App. 199, 18 N. E. (2d) 719, 722; Fraternal Order of Police v. Harris, 306 Mich. 68, 10 N. W. (2d) 310, 311.

The right of municipal governments to restrict or prohibit affiliation of groups of their employees with labor unions or employees organizations has been sustained in a number of decisions involving policemen, firemen and school teachers. See, Labor Unions and Municipal Employees Law by Charles S. Rhyne, p. 26; Fraternal Order of Police v. Harris, supra; Carter v. Thompson, 164 Va. 312, 180 S. E. 410; City of Jackson v. McLeod, (Miss.), 24 So. (2d) 319;

San Antonio Fire Fighters Local Union No. 84 v. Bell (Court of Civil Appeals, Texas), 223 S. W. 506; McNatt v. Lawther, (Court of Civil Appeals, Texas), 223 S. W. 503; Hutchinson v. Magee, 278 Pa. 119, 122 Atl. 234. Appellants contend that the cases cited in support of the above statement, and here relied upon by respondents, "are distinguishable when carefully analyzed." It is true that no case presents the same factual situation, nor the same issues of law that are presented here, but the reasoning and arguments contained in the several cases fully support respondents' position in this case.

In Carter v. Thompson, supra, 180 S. E. 410, 412, the court said: "Police and fire departments are in a class apart. Both are at times charged with the preservation of public order, and for manifold reasons they owe to the public their undivided allegiance. The power in the city of complete control is imperatively necessary if discipline is to be maintained."

In the case of Hutchinson v. Magee, supra, 122 Atl. 234, the court said: "It is generally conceded that association with an organization which, on any occasion or for any purpose, attempts to control the relations of members of either the police or fire departments toward the municipality they undertake to serve, is, in the very nature of things, inconsistent with the discipline which such employment imperatively requires, and therefore must prove subversive of the public service and detrimental to the general welfare."

In the case of City of Jackson v. McLeod, supra, 24 So. (2d) 319, 321, the court said: "It ought to be conceded by everybody that while a city policeman must perform his duties with courage and intelligence, he must do so without favoritism. Nothing could be more unbecoming to a police department than that it shall be pledged, or otherwise committed in an obligatory manner, to a preference of one group over another when all are paying their salaries, and particularly is this true when the groups are such that disputes between them are liable to arise, which in turn may lead to disorders. . . . The police employees must be responsible to the council and must be under its direction, free from the obligation of any other allegiance whatsoever, so far as their activities as policemen are concerned."

While it is true that the charter of Local No. 549 purports to provide that the obligation of members of the police force shall be superior to any obligation to the union, yet so long as human nature is what it is, a man cannot serve two masters. We think it is clear that membership in Local No. 549 might reasonably cause friction and dissention within the force and create prejudice and favoritism in the enforcement of the laws. We hold that the questioned rule was within the powers granted to the respondents by statute; that it bears a reasonable relation to the subject of discipline and government of the police on which respondents may adopt rules and regulations;

86

and that, unless excluded by some applicable provision of the Federal or State Constitutions, the rule is not unreasonable, invalid or unenforceable against appellants and those on behalf of whom the suit is brought.

Section 29, Art. I of the Constitution of Missouri, 1945, provides "that employees shall have the right to organize and to bargain collectively through representatives of their own choosing." Appellants contend that the provision is applicable to appellants as employees of the City of [556] St. Louis and of the State of Missouri; that the debates in the constitutional convention and the votes on proposed amendments prior to the adoption of the provision show that the provision was intended to be applicable to state and municipal employees; and that the word "employees," as used in Sec. 29, Art. I, is broad enough to include appellants. It is admitted that "appellants and the other members of the police force on whose behalf this suit was brought are officers of the city and state." Sec. 7711, supra; American Fire Alarm Co. v. Board of Police Commissioners of Kansas City, 285 Mo. 581, 590, 227 S. W. 114; State ex rel. Crow v. City of St. Louis, 174 Mo. 125, 131, 73 S. W. 623. Appellants, however, contended they are also "employees," within the meaning of the constitutional provision, and have the right to organize by joining a union such as Local No. 549 is alleged to be. There is no contention that respondents' civilian employees have any right to organize independent of the other members of the police force. Appellants concede, as stated, that "the right to bargain collectively, as the term is ordinarily understood, does not exist in the case of public employees"; and that "public employees belonging to a union . . . do not have the right to bargain collectively with their employer, whether it be the City, County or State." In other words, they admit that part of the provision does not apply, but insist that the remainder of the provision is applicable. These contentions are ruled against appellants on the grounds stated in City of Springfield v. Clouse, No. 40127, 356 Mo. 1239, 206 S. W. (2d) 539, decided concurrently herewith.

Appellants further contend that Rule 23, Sec. 342 of the Police Manual "is unconstitutional as denying appellants and other members of the Police Department the right of freedom of speech and freedom of assembly and petition contrary to Secs. 8 and 9 of Art. I of the Constitution of Missouri, and contrary to the First Amendment and Sec. 1 of the Fourteenth Amendment of the Constitution of the United States." It is insisted that members of the Metropolitan Police Force have a right to join a labor union and assemble and exercise their right of freedom of speech to discuss matters affecting their employment; and that these fundamental rights cannot be restricted save to prevent grave and immediate

danger to interests which the state must protect. Appellants further contend that the questioned rule "is unconstitutional as depriving appellants without due process of law of their liberty to become members of a labor union contrary to Sec. 10 of Article I of the Constitution of Missouri, and to Sec. 1 of the Fourteenth Amendment to the Constitution of the United States, and contrary to Sec. 2 of Article I of the Constitution of Missouri." It is contended that the rule deprives appellants of their natural right to liberty, the pursuit of happiness and the enjoyment of the gains of their own industry guaranteed by Sec. 2 of Article I of the Missouri Constitution. Appellants insist that the term "liberty" as used in the above constitutional provisions has "a broad meaning and embraces not only the right of a person to be free from physical restraint, but the right to be free in the enjoyment of all his faculties as were"; and that the right of appellants, as employees, to organize and join a labor union is a fundamental right of which they may not be deprived without due process of law.

No question arises on this record concerning the rights of private citizens to organize themselves into labor unions and exercise all of the claimed constitutional rights and privileges. The case does not involve in any way the merits or demerits of labor unions. The question presented here arises after the appellants and those on behalf of whom the suit is brought have been sworn in as police officers of the Metropolitan Police Force of the City of St. Louis, and after they have voluntarily assumed a particular relationship to the respondents, to the City of St. Louis and to this State. As police officers, their relationship to the City and State is necessarily very different from that of private citizens.

In the case of McAuliffe v. Mayor, etc., of the City of New Bedford, 155 Mass. 216, 29 N. E. 517, decided January 6, 1892, Justice Holmes in upholding a rule excluding police from political activity stated: "The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman. There are few [557] employments for hire in which the servant does not agree to suspend his constitutional rights of free speech as well as idleness by the implied terms of his contract. The servant cannot complain, as he takes the employment on the terms which are offered him. On the same principle the city may impose any reasonable condition upon holding offices within its control."

In the case of Fraternal Order of Police v. Harris, supra, 10 N. W. (2d) 310, 312, the court said: "Those who serve the public, either as the makers of the law, the interpreters of the law, or those who enforce the law, must necessarily surrender, while acting in such capacity, some of their presumed private rights. As stated by Mr. Justice Sharpe: 'Nor can it be denied that when a person is ap-

pointed and becomes a member of the police department, he subjects himself to the reasonable rules and regulations adopted by the board.'"

In Brownell v. Russell, supra, 57 Atl. 103, a rule excluding members of the police force from being "a delegate or representative to, or member of, any political or partisan convention or caucus, or take any part in any political canvass," was upheld. The court said: "We think the removal of the police force from the field of active politics is calculated to promote the efficiency of the force and the purity of municipal government, and that the rule adopted imposes no greater restriction than is reasonably necessary to the accomplishment of this purpose."

Even a judge of this court, when he ceases to be a private citizen and becomes a judge, must surrender his personal right to "directly or indirectly make any contribution to or hold any office in a political party or organization, or take part in any political campaign." Sec. 29(f), Art. V, Const. of Mo. 1945. When a private citizen becomes a judge, he must cease to practice law and to do law business. Sec. 24, Art. V, Const. of Mo. 1945.

Restrictions upon the political activities of civil service employees of the City of St. Louis have been upheld, although attacked on constitutional grounds of interference with freedom of speech and the deprivation of property and liberty without due process of law. State ex inf. McKittrick, Atty. Gen. v. Kirby, 349 Mo. 988, 163 S. W. (2d) 990.

In the recent case of United Public Workers of America v. Mitchel, supra, 91 L. Ed. 509, in construing and upholding the Hatch Act, 18 U. S. C. A. Secs. 61(h) and 61(o) which declare unlawful certain specified political activities of federal employees, the United States Supreme Court pointed out that fundamental human rights were not absolutes and that that "court must balance the extent of the guarantees of freedom against congressional enactment to protect a democratic society against the supposed evil of political partisanship by the classified employees of government." A restriction against taking "any active part in political management or in political campaigns" was approved.

On the facts stated in appellants' petition, the rule complained of did not conflict with the constitutional provisions relied upon. The enforcement of the rule, as threatened, would not invade the constitutional rights of appellants, as claimed. The rule was not invalid or void as to appellants and those on behalf of whom this suit was brought. Appellants are subject to disciplinary action thereunder. The trial court should have so declared the law and thereafter denied other relief.

The judgment of the trial court is accordingly reversed, the rights of the parties are declared as stated, and appellants are denied other relief.

It is so ordered. *Leedy, Hyde, Ellison* and *Conkling, JJ.,* concur; *Douglas, J.,* concurs in result in separate concurring opinion; *Clark, J.,* and *Tipton, C. J.,* concur in results and in separate concurring opinion of *Douglas, J.*

DOUGLAS, J. (concurring).—I concur in the result reached in the principal opinion. In City of Springfield v. Clouse this court held that Section 29, Article I of the Constitution of 1945 does not apply to public employees, not because of a doctrine of **[558]** statutory construction as held in the principal opinion, which doctrine in my view cannot be employed to nullify a provision of a bill of rights, but because the very purpose of Section 29, Article I makes it legally impossible of application to public employees.

The principal opinion in this case deals with Rule 23, Section 342 only on the issues involved in this case. Under the general police powers of the state, the Board of Public Commissioners are empowered in their discretion to forbid members of the police department to join a union.

However, I gravely doubt that Rule 23, Section 342 could be upheld in its entirety. It seems to be so broad as to place unreasonable restrictions on the rights of members of the police department as citizens to meet and to join organizations, the purpose of which would not be inconsistent with proper police discipline or inimical to public welfare.